TATE, Justice.
 

 After jury trial, the defendant Tytus was convicted of the crime of attempted murder. La.R.S. 14:27, 30. He was sentenced to serve seven years in the state penitentiary. Titus perfected three bills of exception (Nos. 4, 6, 8) for this appeal by him. He principally relies upon No. 6.
 

 
 *965
 

 Bill of Exception No. ó
 

 This bill was reserved when the trial court overruled the defendant’s motion for a mistrial. The basis of the motion was an allegedly prejudicial and irrelevant statement made by the prosecutor as a witness. (He took the witness stand to impeach his own witness, claiming surprise and prior contradictory statements made to him.)
 

 The prosecutor allegedly introduced evidence of the accused’s prior bad character, although the accused had not placed his own reputation at issue.
 
 [1]
 

 The ruling took place in the following context:
 

 The defendant Tytus is charged with attempting to murder McCoy, a special deputy sheriff hired to maintain order at a bar. McCoy attempted to question Tytus when he saw a pistol in this accused’s pocket. McCoy testified that Tytus took the pistol from his pocket and fired at him.
 

 Aside from this eyewitness, the chief testimony pertaining to guilt placed the defendant at the scene of the shooting immediately prior thereto. This involved evidence as to his inculpatory statement after his arrest that he was at the bar a little earlier than the shooting
 

 The accused did not take the stand in his own defense. His two witnesses testified that he was at another bar about six blocks away from 8:00 P.M. to 10:00 P.M. that evening. (The shooting occurred at about 9:00 P.M.)
 

 It was in this context that the state called as witness Davis, the owner and operator of another lounge in the vicinity of the shooting. The foundation was laid to ask Davis if he saw Tytus, the accused, immediately after the shooting. Davis testified that, although he
 
 heard
 
 that “one of the fellows” involved in the shooting was outside his door, he did not see him and could not testify definitely that he was there.
 

 The prosecuting attorney pleaded surprise. He asked Davis (a) if Davis had not informed him the preceding Friday that Davis had seen Tytus outside his door after the shooting and (b) also if he had not admitted he was scared of Tytus and his alleged companion and so did not wish to testify. Davis denied these prior statements.
 

 The prosecuting attorney then took the stand himself to impeach this witness by proof of prior contradictory statements.
 
 [2]
 
 
 *967
 
 He testified that Davis'had stated-to him that he had seen Tytus and his companion after the shooting, hut that he did not want to testify because
 
 “those are bad people
 
 and I run a business and I’m scared of them and I don’t want to get involved.” (Italics ours.)
 

 The defendant Tytus’s counsel then objected to the statement as prejudicial, claiming that it was improper evidence as to the accused’s bad character when character was not at issue. This attorney then moved for a mistrial. In overruling the objection and the motion, the trial court instructed the jury that they were not to consider the testimony as having any substantive value as to the guilt of the accused but solely as introduced to prove that the witness Davis’s testimony was unworthy of belief. See La.Code Crim.P. Art. 771.
 

 The basis of the trial court’s rulings was that the testimony was incidental to proof of prior contradictory statements, introduced (and admissible solely) to impeach the credibility of Davis, and that it was relevant in this regard. La.R.S. 15:487 (quoted in Footnote
 
 2).
 

 [3]
 

 The trial court may have been- in error in overruling the objection as to the prosecuting attorney’s statement that the accused was “bad people”. It was offered in explanation of the witness Davis’s pre-trial statement that he was afraid of the accused, such pre-trial statement being inconsistent with his trial denial of the prior statement.
 

 However, the prior inconsistent statement of Davis that he was afraid of the defendant did not relate to a material issue of the case. See McCormick on Evidence, Section 142 (1954). The trial denial of this statement did not entitle the prosecution to plead surprise
 
 as to it
 
 and, so, to prove prior contradictory statements. La.R.S. 15:487, 488 (quoted in Footnote 2). Such prior inconsistent statement as to a collateral matter may be not proved by extrinsic proof. McCormick, Section 36. See, generally, Comment, 30 La.L.Rev. 651, 656-59 (1970).
 

 This inconsistent statement as to Davis’s fear of Tytus is to be distinguished from
 
 *969
 
 the other testimony of Davis that he had not seen the accused Tytus in the vicinity soon after the shooting. This latter testimony clearly related to a material issue and permitted proof of prior contradictory statements. See La.R.S. 15:487, 488 (quoted in Footnote 2).
 

 Testimony of Davis’s prior statement of his fear of Tytus because of the latter’s bad character was apparently introduced to show a statement contrary to Davis’s trial testimony that he was
 
 not
 
 afraid of Tytus; but this last did not pertain to a material issue of the trial. Possibly the prior statement could have been instead (but was not) introduced in connection with the proof of the witness’s
 
 other
 
 pretrial statement (that hé had seen Tytus after the shooting), contradictory to his trial testimony on a material issue. “Material testimony should not be excluded because the witness in giving a connected narrative of an occurrence finds it necessary to mention some act or circumstance not independently admissible in evidence,” State v. Mitchell, 119 La. 374, 379, 44 So. 132, 133 (1907).
 

 We need not rule at this time on such issue, however. In the context of this record, any prejudice occasioned the accused by this repetition of the entire prior statement of Davis (including the objected-to comment as to the accused being “bad people”) was cured by the trial court’s strong and repeated (Tr. 583-85, 603-4, 614-15) admonitions to the jurors to disregard the effect of the entire testimony of prior statements as any proof 'of substantive guilt of the accused, including a reiteration after the objected-to statement.' See La.Code Crim.P. Art. 771.
 

 Further, if error, it was harmless, since not a substantial violation of a constitutional or statutory right, and since in the light of the entire record it was not one which substantially prejudiced the accused. La.Code Crim.P. Art. 921.
 

 In the context of the entire record, the repetition of the incidental statement .complained of (in the course of narration of the entire prior conversation) could not reasonably have had substantial impact on the minds of the jurors. It constituted harmless error. See State v. Hopper, 253 La. 439, 218 So.2d 551, cert. denied 396 U.S. 1012, 90 S.Ct. 545, 24 L.Ed.2d 504 (1970); State v. Hayden, 243 La. 793, 147 So.2d 392 (1962); Hébert, Reversible Error in Louisiana, 6 Tul.L.Rev. 169, 187-90 (1932).
 

 Bill of Exception No. 4
 

 This bill was reserved to the trial court’s overruling objections to the admissibility of inculpatory statements made by the accused Tytus to two deputy sheriffs after his arrest. The basis of the objections was the contention that Tytus had not been informed of his constitutional right to remain silent, etc., as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 
 *971
 
 Before permitting the statements to be received in evidence, the trial court conducted a hearing outside the presence of the jury. The deputy sheriffs testified that they had read the Miranda cautions from a form habitually used by their office and that the accused had assented that he understood each of the rights of which advised.
 

 The accused admitted that the deputies had done so, but he denied he understood. He stated, “ * * * when they asked me to sign I told them I didn’t fully understand what is the meaning of anything that I say could be held against me * * He admitted he was not threatened and that he answered the officers’ subsequent questions voluntarily.
 

 The trial court found that Tytus, who had a tenth grade education and was aged at least twenty-one, did in fact understand the information given to him by the deputy sheriffs of his constitutional rights prior to their taking his statements. The court noted that the accused impressed him as “being intelligent, able to understand the ordinary words of the English language”.
 

 We find no error in the trial court’s finding and in its overruling the objection to the admission of the inculpatory statements.
 

 Bill of Exception No. 8
 

 This last bill was reserved as to the denial of the defendant Tytus’s motion for a new trial following his conviction.
 

 The ground relied upon is the failure of the State to sever Tytus’s trial from that of his codefendant Lucas (the jury failed to .convict the latter), which allegedly deprived Tytus of his right to call Lucas as a witness and to cross-examine him.
 
 [4]
 
 It is contended that Tytus was thus deprived of the right to have compulsory process for obtaining witnesses in his favor, as guaranteed to him by the Sixth Amendment to the United States Constitution.
 

 Initially, we note that, aside from his statement that he was so prejudiced, Tytus makes no showing whatsoever that the testimony of the codefendant could have aided his defense.
 

 In fact, the codefendant’s witnesses placed this codefendant with them in a home six blocks away from the shooting from 6:30 P.M. 9:30 P.M. (The shooting occurred a little before 9:00 P.M.), Tytus’s witnesses placed Tytus with them at a different place during this period. The effect of these two defenses is that neither codefendant was with the other during the time, nor (as their exculpatory statements
 
 *973
 
 to the deputy sheriffs attempted to show) during the entire day of the shooting.
 

 We prefer, however, to rest our ruling upon the defendant’s waiver of any right he might have had to severance by his going to trial without objection to the joinder. See 23 C.J.S. Criminal Law § 939.
 

 Tytus and his codefendant were charged jointly with attempted murder by an information filed by the district attorney. Jointly charged defendants are tried jointly unless (a) the state elects otherwise or (b) the court sustains a motion for severance by a defendant. La.Code Crim.P. Art. 704.
 

 Tytus did not move for severance prior to trial; nor did he make any objection to the joinder until after his conviction. An accused may not complain after his conviction of an error or irregularity in the proceedings unless he objects to it at the time of its occurrence and reserves at the time a bill of exception to an adverse ruling of the court. La.Code Crim.P. Art. 841.
 

 Under these circumstances, the defendant Tytus’s failure to move for a severance or to object to the joinder before trial operates as a waiver of his right to complain of it after his conviction.
 

 Decree
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 Affirmed.
 

 [1]
 

 . See La.R.S. 15:481: “The state is permitted to introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character.”
 

 [2]
 

 . La.R.S. 15:487 provides: “No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and. even
 
 *967
 
 then, the impeachment must be limited to evidence of prior contradictory statements.”
 

 See also La.R.S. 15:488: “‘Surprise’ in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon
 
 some material matter
 
 against the party introducing him and in favor of the other side.” (Italics ours.)
 

 [3]
 

 . See also La.R.S. 15:441: “Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.”
 

 “Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.”
 

 [4]
 

 . La.R.S. 461(3) provides that a person charged with a crime is not competent to be a witness in the prosecution therefor unless he requests to be deemed such.