325 So.2d 802 (1976)
STATE of Louisiana
v.
Samuel Thomas CLARK.
No. 56900.
Supreme Court of Louisiana.
January 19, 1976.
*805 Jerry L. Finley, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Samuel Thomas Clark was charged by bill of information with attempted aggravated escape in violation of La.R.S. 14:27 and La.R.S. 14:110, subd. B. After trial by jury, he was found guilty and was subsequently sentenced to three years at hard labor. On appeal, defendant relies on ten assignments of error for reversal of his conviction and sentence.

FACTS
On December 29, 1974, between seven-thirty and eight o'clock at night, Samuel T. Clark, Allen Ross, Earl Harris, Dwight I. Roberts, Jr., and Frank L. Kilson, all inmates of the Ouachita parish jail, attempted an escape. All but Harris had hidden in the shower during lockdown that night, and, after overpowering Curtis W. Martin, the deputy on duty, they bound and gagged him and threatened to kill him. He was left in an area adjacent to the individual cells in the cell block. Thereafter, defendant unlocked the door and let Harris out of his cell. Martin managed to push himself to the cell of an inmate who then untied him. First a trustee and then Martin were able to thwart the escape by pulling a switch that cut off the power and prevented the elevator from functioning. Realizing that the escape was impossible, the inmates returned to their cells and were locked therein by inmate Roberts. It was at this time that the other deputies arrived to assist Martin. Three of the inmates, Samuel T. Clark, Dwight I. Roberts, Jr., and Frank L. Kilson, were jointly charged and tried on the charge of attempted aggravated escape. At trial, Clark took the stand and stated that any participation by him in this escape was due to threats from Allen Ross. The jury returned a verdict of guilty as to all three defendants. Clark has appealed.

ASSIGNMENT OF ERROR NO. 1
Defendant contends for the first time on appeal that the district court erred when it permitted defendant to be jointly tried with Frank Kilson. He argues that justice required a severance and asserts several grounds therefor.
Article 704 of the Code of Criminal Procedure provides:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
(Emphasis added.)
In State v. Tytus, 256 La. 962, 240 So.2d 723 (1970), defendant raised for the first time a ground for severance in his motion for a new trial following his conviction. We stated therein:
We prefer, however, to rest our ruling upon the defendant's waiver of any right he might have had to severance by his going to trial without objection to the joinder. See 23 C.J.S. Criminal Law § 939.
Tytus and his codefendant were charged jointly with attempted murder by an information filed by the district attorney. Jointly charged defendants are *806 tried jointly unless (a) the state elects otherwise or (b) the court sustains a motion for severance by a defendant. La. Code Crim.P. Art. 704.
Tytus did not move for severance prior to trial; nor did he make any objection to the joinder until after his conviction. An accused may not complain after his conviction of an error or irregularity in the proceedings unless he objects to it at the time of its occurrence and reserves at the time a bill of exception to an adverse ruling of the court. La.Code Crim.P. Art. 841.[1]
Under these circumstances, the defendant Tytus's failure to move for a severance or to object to the joinder before trial operates as a waiver of his right to complain of it after his conviction.
Here, defendant did not file a motion for severance prior to trial nor did he object to the joinder until after conviction and on appeal. Clearly, defendant has waived his right to complain. Thus, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial court erred in sustaining the state's objection to a question propounded to a prospective juror concerning whether the fact that defendant had served and been wounded in Vietnam would cause the juror to be more likely to find him guilty or not to believe his testimony. Defendant argues that this question would have enabled him to discover whether or not the juror was prejudiced against him.
Under article 786 of the Code of Criminal Procedure, the scope of voir dire examination shall be within the sound discretion of the trial court. In absence of a clear abuse of that discretion, this court will not disturb the ruling on appeal.
Parties have a right to question jurors on their examination not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge. State v. Jones, 282 So.2d 422 (La.1973). However, this does not permit an unlimited inquiry into all possible prejudices of prospective jurors. In Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), the United States Supreme Court held that the trial judge's refusal to inquire as to the particular prejudice of prospective jurors against people with beards, where the accused wore a beard, did not violate defendant's constitutional rights. Similarly, in the instant case, the curtailment of inquiry into the possible prejudice against the fact that defendant served and was wounded in Vietnam does not reach the level of a constitutional violation. Furthermore, no prejudice could have resulted from the curtailment of this inquiry. Military service in Vietnam was not in any way material or relevant to the case, nor was there any evidence that defendant served or was wounded in Vietnam. The only evidence concerning defendant's service record was the fact that he was in the service and stationed at Fort Hood, Texas, and, at the time of his incarceration in the Ouachita parish jail, had a detainer lodged against him by the United States Army. We do not find that the trial judge abused his discretion in refusing to permit this particular inquiry. Hence, there is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 3
Another inquiry which was denied during voir dire examination of a prospective juror is the subject of this assignment of error. Defendant contends that he was seeking to ascertain whether the prospective *807 juror would follow an instruction of the judge on the defense of justification. The question sought to be asked was:
All right. Now if the Court should instruct you that when any crime, except murder, is committed through the compulsion of threats by another of death or great bodily harm and the offender reasonably believes the person making the threats if the crime were not committed, that this isif he should instruct you that this is a defense and the evidence would show this would you then find the defendant not guilty?
The trial judge sustained the state's objection to this question on the ground that it was an attempt to get the juror to commit himself in advance of hearing the evidence. The trial judge informed defense counsel at the time that he would permit him to ask the juror if he would accept the law as given to him by the court.
Admittedly, a juror may be challenged for cause if he will not accept the law as given him by the court. La.Code Crim.P. art. 797(4). However, the question here goes far beyond such an inquiry. Rather, it attempts to obtain a pre-judgment of the case based on a possible law instruction of the court and on facts which might be adduced at trial. Such an inquiry is not permitted on voir dire examination.
Voir dire examination is designed to test the competency and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at trial. State v. Square, 257 La. 743, 244 So.2d 200 (1971). In State v. Smith, 216 La. 1041, 45 So.2d 617 (1950), we stated:
. . . Moreover, hypothetical questions and questions of law are not permitted in the examination of jurors which call for a pre-judgment of any supposed case on the facts. 50 C.J.S. Juries, § 275, p. 1042; State v. Henry, 197 La. 999, 3 So.2d 104; State v. Thornhill, 188 La. 762, 178 So. 343. See also 31 Am.Juris., page 670, para. 154; State v. Plummer, 153 La. 730, 96 So. 548 and State v. Scott, 198 La. 162, 3 So.2d 545.
State v. Corbin, 285 So.2d 234 (La.1973); State v. Square, supra. Hence, there is no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 4
Defendant moved for a mistrial claiming that the jurors saw him in handcuffs during a recess of the trial. He argues that this gave the jurors the impression that he was a dangerous person who might try to escape and, since this was a trial for attempted aggravated escape, it made it appear that he committed the crime for which he was charged.
We find no merit in this contention. Evidence adduced on the motion for a new trial reveals that only three of the twelve jurors remembered seeing defendants handcuffed. The handcuffs were not on defendants during trial or by court order. They were placed on defendants for their departure from the courtroom for a recess. The three jurors who recalled seeing defendants on this occasion testified that it had no effect on their decision; they considered it normal procedure; and it did not make them think defendants were dangerous. It should be noted that the jury was aware that defendants were in fact inmates of the Ouachita parish jail and were being prosecuted for their attempted escape therefrom.
The record must clearly show that the occurrence complained of was prejudicial to the rights of the accused. State v. Kinchen, 290 So.2d 860 (La.1974); State v. Tennant, 262 La. 941, 265 So.2d 230 (1972); State v. Spencer, 257 La. 672, 243 So.2d 793 (1971). In State v. Crockett, 262 La. 197, 263 So.2d 6 (1972), we found no prejudice requiring reversal where the accused was escorted out of the courtroom in handcuffs in full view of the jury on one occasion. Similarly, in the instant case, we do not find that the incident complained *808 of prejudiced any rights of defendant. Accordingly, the trial judge did not err in denying defendant's motion for a mistrial.

ASSIGNMENT OF ERROR NO. 5
Defendant first contends that the trial judge erred in denying him the right to impeach his own witness. He argues that he was taken by surprise in that the witness' testimony at trial was contrary to a prior statement made to defense counsel. Secondly, defendant asserts that he was denied the right to cross-examine his own witness. He contends that this right is accorded him under the 1974 constitution which is broader in scope than the previous one (1921 constitution).

I.
The statutory provisions pertinent to defendant's first contention are:
La.R.S. 15:487:
No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.
La.R.S. 15:488:
`Surprise' in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.
La.R.S. 15:493:
Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.
The context facts relevant to this issue are as follows. Solomon Graves, an inmate at the time of the attempted escape, was called as a defense witness. He testified as to the events that transpired on the night of the attempted escape. Defense counsel then asked the witness whether he had heard defendant say anything between lockdown and the time Martin returned to the cell block. Graves responded in the negative. Defense counsel then pleaded surprise. Outside the presence of the jury, defense counsel stated that he had previously spoken to this witness who related that he had heard defendant make a statement to the effect that defendant wanted to call off the escape but Ross would not allow it. It was on the basis of this prior contradictory statement to defense counsel that surprise was pleaded. Graves, admitting having previously spoken to defense counsel relative to this matter, was asked by defense counsel whether Graves recalled counsel asking him about statements made by defendant during the period in question. The state objected to defendant impeaching his own witness by use of a prior contradictory statement which was not in writing. The state's objection was sustained.
The ruling was erroneous. Impeaching prior statements may be either oral or written.[2] Our statutory law does not restrict prior contradictory statements to those written, for the word "statements" is used without qualification. La.R.S. 15:487 limits the impeachment to evidence of "prior contradictory statements," and La.R.S. 15:493 refers to impeachment "by proof of any statement made by him contrary to his testimony." (Emphasis added.)
*809 The record clearly establishes that defendant was surprised by the testimony of Graves. His testimony at trial that he did not hear defendant say anything between lockdown and the time Martin returned to the cell block was contrary to his previous statement to defense counsel that defendant stated that he wanted to call off the escape but Ross would not allow it. Not only did the witness fail to testify as expected but his testimony was on a "material matter against the party introducing him and in favor of the other side" in that the defense in the case was that defendant had participated in the escape due to threats by Ross. La.R.S. 15:488.
Having been taken by surprise by the testimony of this witness, defendant was entitled to impeach him. By the court sustaining the state's objection, defendant was precluded from proceeding to question Graves as to whether or not he admitted making said prior contradictory statement to defense counsel. If he had not distinctly admitted making such statement, evidence that he did make it would have been admissible. La.R.S. 15:493.
Thus, the trial court erred in not allowing defendant to impeach Graves. Nevertheless, the error was not reversible, as any prejudice resulting therefrom was counteracted or removed by later testimony.
At most, defendant would have been able to get the prior contradictory statement of Graves before the jury. However, later testimony of defendant and another witness established the content of said statement. Defendant testified that after the lockdown but before Martin returned to the cell block he made the statement that he wanted to call it off but Ross said that it had gone too far and, if defendant refused to go along, "it'll be your ass." The testimony of Roberts (an inmate and co-defendant) was exactly the same as defendant's in this respect. Since the ultimate purpose of impeaching Graves was to get before the jury the fact that defendant wanted to back out but could not because of threats from Ross, it was, in fact, accomplished by this later testimony. The prior contradictory statement of Graves would have been only cumulative under the circumstances. Any prejudice, resulting from the erroneous ruling by the trial judge, was removed by the later testimony, and therefore the error complained of is not reversible.

II.
Defendant's second contention is likewise without merit. In State v. Brent, 248 La. 1072, 184 So.2d 14, cert. denied, 385 U.S. 992, 87 S.Ct. 605, 17 L.Ed.2d 452 (1966), State v. Bush, 297 So.2d 415 (La.1974), and more recently in State v. Rogers (La.1975), we held that an accused does not have the right to call a witness under cross-examination in a criminal prosecution. As we stated in Brent, Bush and Rogers, a witness called by defendant before he is called by the state becomes defendant's witness. We further reject defendant's contention that the right to cross-examine his own witness under the 1974 constitution is broader in scope than the previous one (1921 constitution).[3]
In sum, Assignment of Error No. 5 is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends that the trial judge erred in not allowing him to call the deputy clerk of court to establish defendant's prior convictions.
The context facts relevant to this issue are as follows. At trial, defendant took the stand in his own behalf. During cross-examination, he was asked if he had *810 any previous convictions. He replied that he had been convicted of theft "by check" on December 30, 1974 and for issuing a worthless check a year earlier. On re-direct, defendant stated that his conviction for theft on December 30, 1974 was the result of a guilty plea. Apparently not satisfied with defendant's testimony on this point, defense counsel attempted to call Bill McNabb, deputy clerk of court, to establish precisely the crimes for which defendant had been convicted. McNabb had previously testified as to these charges but was no longer in his office. The state objected to delaying the trial for this purpose. At this point, there was a short recess, after which it is stated in the record that the state and defendant had entered into a stipulation that defendant "pled guiltywas convicted of worthless checks or theft by checks on that date" (December 30, 1974). Defense counsel acknowledged his approval of the stipulation.
First, the trial judge never denied defendant's request to call the deputy clerk. The request was apparently withdrawn by the acquiescence of defendant in the stipulation. Hence, defendant has clearly waived any right to complain. In any event, McNabb had previously testified that defendant had two charges of theft "by check" pending against him at the time of his incarceration. He further stated that both charges were for misdemeanors, minor offenses, involving checks for ten dollars and one dollar, respectively. Thus, it is of relative insignificance that the prior convictions were for theft or issuing worthless checks in view of the fact that evidence had been presented to the jury that the offenses were minor ones involving checks for only ten dollars and one dollar. Under these circumstances, no prejudice resulted. In sum, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 7
During cross-examination of Dwight Roberts, one of the co-defendants, the trial judge refused to permit defense counsel to ask him to compare defendant's physical size to that of Ross, the inmate whom defendant contended threatened him into participation in the escape attempt. Defendant urges that this was error since this information was vital to his defense of justification.
Immediately prior to this question seeking the comparison of Ross' size to that of defendant, Roberts described Ross as about one-half to three-quarters of an inch shorter than himself, weighing one hundred seventy-five to one hundred eighty-five pounds and huskily built in his shoulders and arms. From this description of Ross, the jury could easily compare it with that of defendant who was in their full view. Moreover, defendant had previously testified regarding the comparison of Ross' physical size to his own. Therefore, the testimony of Roberts in this respect would have been merely cumulative. No prejudice resulted from the refusal of the trial judge to allow the question. Assignment of Error No. 7 is without merit.

ASSIGNMENT OF ERROR NO. 8
In this assignment of error, defendant alleges that the trial judge erred in overruling his motions for a directed verdict of acquittal at the close of the state's evidence and of all the evidence. This court can find error in the trial judge's denial of a motion for a directed verdict and reverse the conviction only when there is no evidence of the crime or an essential element thereof. La.Code Crim.P. art. 778 (1966); State v. Douglas, 278 So.2d 485 (La.1973).
Defendant was charged with the crime as set forth in La.R.S. 14:110, subd. B as follows:
B. Aggravated escape is:
The intentional departure of a person from the legal custody of any officer of the Department of Corrections or any *811 law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.
Defendant urges that there was no evidence that the attempted escape took place "under circumstances wherein human life is endangered." He further argues that all the evidence clearly indicates that any participation by defendant was justified under threats of great bodily harm by Ross.
Defendant was identified as one of the inmates who participated in the attempted escape and attack on Martin whose hands and feet were tied and a gag (towel) placed in his mouth. Martin testified that he could not breathe and would have strangled except for the fact that defendants returned and pulled the gag out a bit in order to permit him to answer as to the location of the keys. After finding the keys in his pocket, in their haste to leave, they did not push the gag all the way back. Martin also testified that Ross had earlier told the other inmates to gag and kill him. Martin was scratched and bruised and his finger injured. A trustee received an injury to his eye. Certainly, this constitutes some evidence that the attempted escape took place "under circumstances wherein human life is endangered." Additionally, the record contains ample evidence that defendant's participation in the crime was not justified under threats of great bodily harm by Ross. Hence, the trial judge correctly denied defendant's motions for a directed verdict of acquittal. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 9
This assignment of error complains that La.R.S. 14:110, subd. B is unconstitutionally vague and ambiguous in that it does not define "under circumstances wherein human life is endangered."[4]
It is well settled that in order to comply with constitutional safeguards, penal statutes must describe the unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. State v. Lindsey, 310 So.2d 89 (La.1975). The phrase "under circumstances wherein human life is endangered" offers a sufficiently clear and definite standard of criminal conduct. The words have a commonly known and well-understood meaning and application. Generic terms are often used by the legislature in defining criminal conduct. A statute need not set out every circumstance and variation in conduct which may be a violation thereof. City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974). It suffices that the words or phrase used denote to a person of ordinary intelligence the conduct proscribed in the statute. La.R.S. 14:110, subd. B meets these tests. Defendant's challenge to the constitutionality of the statute fails in this case. Assignment of Error No. 9 is without merit.

ASSIGNMENT OF ERROR NO. 10
Defendant asserts five grounds for the granting of a new trial. For the reasons hereinafter set forth, we find no error in the ruling of the trial judge denying this motion.
First, it is argued that the verdict is contrary to the law and the evidence. This presents nothing for our review. Three grounds deal with matters previously raised in Assignments of Error *812 Nos. 4, 5 and 6. For reasons assigned therein, we find no merit in these contentions. The final ground urged in support of the motion is that the ends of justice require the granting of a new trial. This ground presents no error of law for our review. The trial judge did not err in denying defendant's motion for a new trial. In sum, this assignment of error is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] Article 841 of the Code of Criminal Procedure as amended by La.Acts 1974, No. 297, § 1, provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. . . . The requirement of an objection shall not apply to the court's ruling on any written motion."
[2] Jones on Evidence, 6th ed., Vol. 4, Chap. 26, § 26:5, p. 182.
[3] La.Const. art. 1, § 16 (1974) provides in pertinent part: "An accused is entitled to confront and cross-examine the witnesses against him . . .," whereas, La.Const. art. 1, § 9 (1921) provides in pertinent part: "The accused in every instance shall have the right to be confronted with the witnesses against him . . .."
[4] This issue is raised for the first time on appeal. Nevertheless, we consider it as the unconstitutionality of a statute on which a conviction is based is an error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. La.Code Crim.P. art. 920, Official Revision Comment (d) (1966), as amended, La.Acts 1974, No. 207, § 1. See State v. Williams, 322 So.2d 177 (La.1975); City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974). Cf. La.Code Crim.P. art. 859 (2) (1966); State v. Peterman, 121 La. 620, 46 So. 672 (1908).