551 So.2d 707 (1989)
STATE of Louisiana
v.
Nicky N. CROCKER and John Buck.
No. KA 88 1577.
Court of Appeal of Louisiana, First Circuit.
October 11, 1989.
*708 Allen Helm, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Peter O. Cola, New Orleans, and Rose Susan Eugenia Dorsey, Franklin, for defendant and appellantNicky Crocker.
Don J. Hernandez, New Orleans, for defendant and appellantJohn Buck.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
The defendants, Nicky N. Crocker and John Buck, were charged by bill of information with possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute, in violation of La.R.S. 40:967 A and 979 A, respectively. Both defendants pled not guilty and, after trial by jury, were found guilty as charged on each count. For the possession of cocaine with intent to distribute conviction, co-defendant Crocker received a sentence of eight years at hard labor. He received a concurrent sentence of two and one-half years at hard labor for the conspiracy conviction. Co-defendant Buck received a sentence of ten years at hard labor for possession of cocaine with intent to distribute and a consecutive sentence of five years at hard labor for the conspiracy conviction.[1]
Co-defendant Crocker has appealed, originally alleging seven assignments of error, four of which were briefed. Those assignments of error not briefed are considered abandoned. Uniform RuleCourts of AppealRule 2-12.4. The errors considered are as follows:
*709 1. The trial court erred in denying the defendant's motion for a severance.
2. The trial court erred in refusing to quash the jury venire.
3. The trial court erred in refusing to quash the bill of information.
4. The prosecutor's prejudicial remarks exceeded the scope of opening statement and closing statement.
Co-defendant Buck has appealed, originally alleging ten assignments of error, five of which were briefed.[2] Those assignments of error not briefed are considered abandoned. Uniform RulesCourts of AppealRule 2-12.4. The errors briefed are as follows:
1. Due to insufficient evidence, the defendant's conviction should be reversed.
2. The trial court erred in allowing the State to amend the bill of information.
3. The trial court erred in failing to restrict the scope of the prosecutor's opening remarks.
4. The trial court erred in denying the defendant's motion for a mistrial based on the prosecutor's closing remarks.
5. The trial court erred in sentencing the defendant to consecutive terms of imprisonment.

FACTS
On February 3, 1986, while working in an undercover capacity, Louisiana State Trooper Louis Hyatt met with Buck and arranged to purchase four ounces of cocaine from him. The price agreed upon was $1800.00 per ounce. This meeting between Buck and Hyatt occurred at a trailer home in St. Mary Parish. The occupants of the trailer home were Buck, Michael Matte, and his girlfriend. The trailer home was placed under surveillance and a registration check performed on a vehicle parked outside the trailer. The vehicle, a 1976 Oldsmobile Cutlass, was registered to Matte.
Several days later, Buck contacted Hyatt and instructed him to go to a Time Saver Store at the intersection of Alma and Westside Boulevard in Houma, Louisiana, where the drug transaction would take place. When Hyatt arrived at the Time Saver Store, he observed Buck emerge from a phone booth and walk around the rear of a green, Mercury Marquis, toward him. When Hyatt approached Buck, Buck stated that he had one ounce of cocaine and the other three ounces were nearby. Buck stated that he wanted payment for the entire four ounces of cocaine and that he would return to that location with the remaining three ounces. Hyatt became suspicious and refused to deal in that fashion. He placed his money back inside his vehicle, returned to the Mercury Marquis and opened the rear passenger door. He asked to see the cocaine; but the driver of the Mercury Marquis, Crocker, stated: "We're not going to do the deal like this, get out of the car." Buck instructed Hyatt to get in the car so they could go to Hyatt's apartment. Hyatt did as told but produced his revolver, informed Buck and Crocker that he was a State Trooper, and told them that they were under arrest, before they could leave the parking place. Immediately, several other police officers stationed nearby converged on the Mercury Marquis. Crocker grabbed Hyatt's gun and struggled with him until another officer subdued Crocker. One ounce of cocaine was recovered from a jacket on the front seat of the Mercury Marquis.
After Buck and Crocker were arrested, the officers observed the 1976 Oldsmobile Cutlass parked across the street in the parking lot. Matte and James Hutchinson, who were hiding inside the Oldsmobile Cutlass, were placed under arrest; and the remaining three ounces of cocaine was recovered from this vehicle. Several guns, knives, and some ammunition were seized from the suspects and their two cars. A vehicle registration check revealed that the *710 green, Mercury Marquis belonged to Crocker's girlfriend.
Subsequently, Buck made an incriminating statement to the effect that he only had one ounce of cocaine in his jacket pocket and that the police could not prove that the remaining three ounces of cocaine belonged to him. Crocker also made an inculpatory statement. According to Hyatt, shortly after Crocker was arrested, he stated to Hyatt that he had only become involved in the "dope deal" an hour before it began.

MOTION TO SEVER (CROCKER)
In this assignment of error, co-defendant Crocker contends that the trial court erred in denying his motion for a severance. Crocker's motion to sever alleged that there was a danger of antagonistic defenses and that both he and Buck were represented by the same attorney. However, the minute entry of December 4, 1986, indicates that the motion to sever was withdrawn without a hearing upon defense counsel's request.[3]
The failure to timely file a motion for severance or object to the joinder before trial operates as a waiver of the right to raise the issue of joinder on appeal. State v. Clark, 325 So.2d 802, 806 (La.1976); State v. Tytus, 256 La. 962, 240 So.2d 723, 727 (1970). Because defense counsel withdrew the motion to sever and did not file a new motion or object to the joinder before trial, any objection to the joinder was waived.
Moreover, we note that the defendant was not prejudiced by this failure to refile the motion to sever and/or object to the joinder. A defendant is not entitled to a severance as a matter of right. Rather, the decision rests within the sound discretion of the trial court. See La.C.Cr.P. art. 704; State v. Robertson, 509 So.2d 98, 100 (La.App.1st Cir.1987). A conviction will not be reversed on the ground that a defendant should have been granted a severance unless the defendant would probably not have been convicted had he been allowed a separate trial. State v. McGraw, 366 So.2d 1278, 1285 (La.1978). In the instant case, there was substantial evidence of Crocker's guilt. The evidence would have been sufficient to convict him even if he had been tried separately. Therefore, as noted above, the defendant was not prejudiced by the withdrawal of the motion to sever. See State v. Jones, 537 So.2d 1244, 1248 (La. App.4th Cir.1989).
This assignment of error is meritless.

JURY VENIRE (CROCKER)
In this assignment of error, co-defendant Crocker contends that the trial court erred in denying a motion to quash the jury venire.
At the beginning of voir dire, it was discovered that the one hundred twenty member jury venire contained the names of ten persons who had been transferred from other jury panels. The Clerk of Court's Office had added these ten persons to the one hundred ten persons selected by the Jury Commission for that jury week. Counsel for co-defendant Buck made an oral motion to quash the jury venire. When asked by the trial court to explain the grounds for the motion, counsel stated that no one could state the exact number of prospective jurors in the venire. The trial court disagreed and noted that there were exactly one hundred twenty jurors in the venire. The trial court further noted that it was a common practice to supplement the venire with transfers from other jury panels. Finally, the trial court gave defense counsel a choice of accepting the one hundred twenty person venire (which included the ten transferred prospective jurors) or, in the alternative, accepting the original one hundred ten person venire selected by the Jury Commission for that jury week. Defense counsel refused to make a choice and merely entered a general objection to the jury venire. The trial court decided to dismiss the ten names supplemented by the Clerk's Office and use *711 the original one hundred ten member venire.[4]
At the outset, we note that the defendant did not file a written motion to quash. See La.C.Cr.P. art. 536. Although defense counsel requested an oral motion to quash, it was apparent from his actions and words that he was entering a general objection to the jury venire, although he used the words "[m]ove to quash the venire." The correct procedural device for alleging that the general or petit jury venire was improperly drawn, selected, or constituted is a motion to quash. La.C.Cr.P. art. 532(9). The failure to file a motion to quash on these grounds constitutes a waiver of the objection. La.C.Cr.P. art. 535 D; State v. Collins, 359 So.2d 174, 177 (La.1978).
Moreover, we note that the defendant failed to explain how he was prejudiced by the irregularities in the composition of the jury venire, apart from a general allegation in his brief that his rights to due process and a fair trial were "violated" and "ignored for the sake of expediency." La.C. Cr.P. art. 419 provides, in pertinent part:
A. A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.
The defendant has the burden of establishing fraud or irreparable injury in the jury selection process. State v. Roy, 496 So.2d 583, 589 (La.App.1st Cir.1986), writ. denied, 501 So.2d 228 (La.1987). A defendant in a criminal jury trial has no right to trial by a particular jury or juror, but only to a trial by a competent, impartial jury. Due process in a criminal jury trial requires only that the defendant be afforded a jury from which there has been no arbitrary exclusion of any particular group of individuals. 496 So.2d at 589. The defendant has not established that a fraud was practiced by the Clerk's Office in supplementing the jury venire or that he suffered any degree of prejudice or injury as a result of the trial court's decision to utilize the original jury venire of one hundred ten persons selected by the Jury Commission.
For the above reasons, this assignment of error is meritless.

BILL OF INFORMATION (CROCKER AND BUCK)
In these assignments of error, the defendants contend that the trial court erred in failing to quash the bill of information after it was amended during the trial.
After the jury had been selected, but before opening arguments, the trial court allowed the prosecutor to amend Count 2 of the bill of information, which charged the defendants with conspiracy to possess cocaine with the intent to distribute, in violation of LSA-R.S. 40:979 B. The prosecutor amended the bill of information to the correct statutory citation for this offense, which is LSA-R.S. 40:979 A. The defendants objected and made an oral motion to quash the bill of information. They contend that this amendment to the bill of information created a new charge against them where a charge had not previously existed. We disagree. La.C.Cr.P. art. 487 provides, in pertinent part:
A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.

*712 Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.
Failure to cite the correct criminal statute number is a technical deficiency in the bill of information. See La.C.Cr.P. art. 464; State v. Sims, 426 So.2d 148, 158 (La.1983). Clearly, in accordance with La. C.Cr.P. art. 487, the error in the statutory citation was a defect of form, rather than substance, and could be amended at any time. In any event, the defendants have failed to show how they were prejudiced by the correction of the statutory citation, since the language of the bill of information informed them of the charge of conspiracy to possess cocaine with the intent to distribute. Contrary to the defendants' arguments in brief, the amendment of the statutory citation in this instance did not create a new charge in the bill of information. Consequently, the trial court did not err in allowing the prosecutor to amend the bill of information.
These assignments of error are meritless.

PROSECUTOR'S REMARKS (CROCKER AND BUCK)
In these assignments of error, the defendants contend that the trial court erred in overruling several objections to improper and prejudicial remarks made by the prosecutor during opening and closing arguments. The defendants also contend that the trial court erred in denying a mistrial on this basis.
During the prosecutor's opening statement, the following colloquy occurred:
The trial of serious crimes imposes upon you people a grave responsibility, ladies and gentlemen, and this is a serious crime. You see the acts which the State of Louisiana is attempting to punish in this case imposes a grave responsibility toward these acts dealing in controlled dangerous substances, the illicit trafficking in narcotic drugs or other dangerous drugs. They are so malignant in their affect (sic) and so devastating and so far reaching that we cannot afford to ignore these kind of acts because the State of Louisiana may not survive the repeated, unpunished, repetition
MR. HERNANDEZ:
Objection, Your Honor. That has nothing whatsoever to do with the facts in this case and it goes well beyond the limits of the Code of Criminal Procedure with regards to opening statement.
THE COURT:
Well, Mr. Helm, I would prefer if you would try to keep your opening statements directed toward the evidence the State intends to produce. With that caution I'll overrule the objection and let your (sic) proceed.
MR. HELM:
Well, let's get to the facts because I want to tell you something. Mr. Hernandez is going to choke on the facts of this case. There are going to be more facts in this case than Mr. Hernandez can stomach, there's going to be more facts
MR. HERNANDEZ:
Objection, Your Honor, we are not personalizing these matters. Mr. Hernandez is not [on] trial here today.
THE COURT:
Overrule the objection. Let the objection be noted.
Proceed to the factual evidence.
MR. HELM:
Yes, Your Honor.
During the prosecutor's rebuttal closing argument, the following colloquy occurred:
First of all, let me tell you what the director of the FBI said a few years ago, William Webster, now head of the CIA, and it's true beyond any doubt whatsoever, the informant is the single most effective tool in the law enforcement arsenal.
MR. HERNANDEZ:
Objection, that has no relevance to this casethe FBIthe director of the FBI it's not evidence
MR. HELM:
I'm trying to argue my case, Judge. I showed him that courtesy.

*713 THE COURT:
Objection overruled.
MR. HELM:
Well, he would have you believe there's something wrong with the police using an informant, there's nothing wrong with that, it's probated (sic) by law. It's the natural, the most efficacious way to ferret out people who are violating the laws. These defendants took upon themselves to betray the laws of this state, to sell their birthright and to violate the interests which we have in the public safety of this state by arming themselves with guns, knives, four ounces of cocaine and coming into this parish with but one purpose, to sell that cocaine. And now they're going to look you in the eye and tell you that I'm the villain, that Trooper Hyatt's the villain and we've done something wrong. Well, if that's the way you feel I suppose you have the unfair discretion to send us a message and say cut it out, we find him not guilty. And believe I'm not stupid, tell me one time, I'll put the brakes on so fast you won't believe it. If you don't think this is the right way to do it, send us a message, we'll quit. We've got two troopers working eight parishes, we got all the cotton we can gin. (Emphasis ours.)
I don't have any apologies to make for this case, I don't see any wrongdoing by the official acts of the agents, employees, and officers of the State. We do the best we can with what we've got, we do it to protect your rights to life, liberty and property, to keep drug crazed criminals off the street, that's the intent of these laws.
MR. HERNANDEZ:
I want to object. I want to make a motion out of the presence of the Jury.
After the prosecutor finished his closing argument, the trial court removed the jury and the defendants made a motion for a mistrial based on the above remarks by the prosecutor during his closing argument. The trial court denied the motion.
La.C.Cr.P. article 766 provides:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
La.C.Cr.P. article 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
The first two objections noted above, made during the prosecutor's opening statement, were overruled by the trial court. However, on both occasions, the trial court instructed the prosecutor to proceed to the factual evidence of the case. Although the prosecutor had begun to stray from the scope of the opening statement on both occasions, the timely objection by the defense and the trial court's admonition to the prosecutor prevented any prejudice to the defendants in these situations.[5]
The first objection during the prosecutor's rebuttal argument occurred when the prosecutor was trying to explain the importance of using an informant in drug cases. This portion of the rebuttal argument was a direct reply to the closing argument made by co-defendant Buck's counsel, in which he portrayed Hyatt and the confidential informant as setting a trap for the defendants, using the analogy of a spiderweb.
*714 The last objection noted above, made during the prosecutor's rebuttal argument, is much more serious. The prosecutor was trying to respond to defense counsel's argument by saying that the use of informants is permitted and that the State had not engaged in any wrongdoing in this case. However, the prosecutor made a statement predicting the consequences of a not guilty verdict, as emphasized in the colloquy, which is clearly improper. State v. Craddock, 435 So.2d 1110, 1123 (La.App. 1st Cir.1983).
While the comments were improper, the evidence against the defendants was overwhelming; apart from its suggestion by counsel for co-defendant Buck in his closing argument, entrapment was not really an issue in this case. Before a verdict will be overturned on the basis of improper argument, this Court must be thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Savoie, 448 So.2d 129, 135 (La.App. 1st Cir.), writ. denied, 449 So.2d 1345 (La. 1984).
We note that, when giving opening remarks and charging the jury, the trial court informed the jurors no less than four times that the opening statements and closing arguments of counsel were not evidence. The trial court also instructed the jurors that they were to determine the facts only from the evidence presented and that they were not to be influenced by sympathy, passion, prejudice, or public opinion. See State v. Bell, 477 So.2d 759, 768 (La.App. 1st Cir.1985), writ. denied, 481 So.2d 629 (La.1986). Considering the above instructions to the jurors, and the evidence presented in this case, we conclude that the prosecutor's improper remarks did not influence the jury or contribute to the guilty verdicts.
For the above reasons, these assignments of error are meritless.

SUFFICIENCY OF EVIDENCE (BUCK)
In this assignment of error, co-defendant Buck contends that his convictions should be reversed due to insufficient evidence. Specifically, he complains of an alleged "variance" between the amount of cocaine listed in the bill of information (121.5 grams) and the amount of cocaine actually proven at the trial.
The proper procedural vehicle for raising the issue of the sufficiency of the evidence is by a motion for post-verdict judgment of acquittal. La.C.Cr.P. article 821; State v. Korman, 439 So.2d 1099, 1100-1101 (La.App. 1st Cir.1983). Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. The standard set forth in Article 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Acting in an undercover capacity, Hyatt posed as a buyer interested in obtaining four ounces of cocaine. The defendants were arrested while negotiating the sale of the cocaine with Hyatt while seated inside the Mercury Marquis. Approximately one ounce of cocaine was discovered in a jacket located on the front seat of the Mercury Marquis. The remaining cocaine (approximately three ounces) was seized in the 1976 Oldsmobile Cutlass parked across the street. This vehicle was registered to Michael Matte, Buck's roommate, and had been observed parked outside the trailer in which Buck and Matte lived. Several guns, knives, and some ammunition were seized from the suspects and their vehicles.
Contrary to the defendant's argument in brief, there was no "variance" between the amount of cocaine charged in the bill of information (121.5 grams) and the amount proven at trial (approximately four ounces). Moreover, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational fact-finder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of possession of cocaine with the intent to distribute and conspiracy to possess cocaine *715 with the intent to distribute. See State v. Mussall, 523 So.2d 1305 (La.1988).
This assignment of error is meritless.

EXCESSIVE SENTENCES (BUCK)
In this assignment of error, co-defendant Buck contends that the trial court erred in imposing excessive sentences. Specifically, he argues that the trial court erred in sentencing him to consecutive terms of imprisonment for these offenses.
La.C.Cr.P. article 883 provides, in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
Concurrent rather than consecutive sentences are the general rule for multiple convictions arising out of a single course of criminal conduct, at least for a defendant without a prior criminal record. La.C.Cr.P. art. 883; State v. Underwood, 353 So.2d 1013, 1019 (La.1977). However, even if convictions arise out of a single course of conduct, consecutive sentences are not necessarily excessive; other factors must be taken into consideration in making this determination. State v. Ortego, 382 So.2d 921, 923, cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Atley, 470 So.2d 621, 623 (La.App. 1st Cir. 1985). For instance, consecutive sentences are justified when the offender poses an unusual risk to the safety of the public. State v. Jett, 419 So.2d 844, 852 (La.1982).
There was no presentence investigation report in the instant case. At the sentencing hearing, defense counsel stated that Buck had no prior felony convictions. However, the trial court noted several misdemeanor convictions and a pending charge for attempted second degree murder. The trial court specifically noted that the defendants were armed when they were arrested. The evidence indicated that eighteen rounds of .357 magnum ammunition and two pocket knives were recovered from Buck after his arrest. Also, a .357 magnum and a "butterfly" knife were seized from the front seat of the Mercury Marquis, the car in which Buck and Crocker were apprehended.
Under these circumstances, the fact that the trial court imposed consecutive sentences for these offenses does not render these sentences excessive. There is no doubt that drug dealers, especially when armed, pose a serious threat to the safety of themselves, law enforcement officers, and the general public. Furthermore, the sentences imposed for these offenses were well within the statutory limits and, in our opinion, do not constitute an abuse of discretion by the trial court.
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Although originally charged in the instant bill of information, James Hutchinson and Michael Matte were not tried with Crocker and Buck and are not parties to the instant appeal.
[2] Errors three and four were combined by the defendant when briefed and will be addressed as one error.
[3] At the trial, the defendants were represented by different attorneys.
[4] As noted above, it was counsel for co-defendant Buck who originally raised this objection at the trial. However, Buck abandoned this assignment of error on appeal. Nevertheless, co-defendant Crocker can properly raise the issue on appeal because Buck's objection applied to both defendants. See La.C.Cr.P. art. 842.
[5] Two defense objections to remarks made by the prosecutor during his opening statement were sustained by the trial court. Thereafter, the defendants neither requested an admonition by the trial court nor moved for a mistrial. When an objection to the prosecutor's argument is sustained, unless a defendant timely requested an admonition or a mistrial, he cannot complain of the alleged error on appeal. State v. Sharp, 414 So.2d 752, 755 (La.1982). Therefore, these two instances of alleged improper remarks by the prosecutor during his opening statement are not considered herein.