BARRY, Judge.
The defendant was convicted of attempted aggravated escape, La.R.S. 14:27,14:110 C, and sentenced to four years at hard labor with the sentence to run consecutively to any other sentence. The defendant argues that the State did not prove beyond a reasonable doubt that he was guilty of attempted aggravated escape.
La.R.S. 14:110 C provides in pertinent part:
(1) Aggravated escape is the intentional departure of a person from the legal custody of any officer of the Department of Public Safety and Corrections or any law enforcement officer or from any place where such person is legally confined when his departure is under circumstances wherein human life is endangered.
The Reporter’s Comment discusses the difference between simple and aggravated escape. It notes the rationale that a person who escapes without endangering human life is not as guilty as one who endangers human life during his escape. Whether the offender is armed is of no consequence. See also State v. Clark, 325 So.2d 802 (La.1976).
Deputy Wilson testified that he picked up the defendant at Orleans Parish Prison. The defendant was handcuffed and secured with a lock-box type restraint belt which fit over the handcuffs and was secured with a chain which went around the defendant’s waist and was locked with a padlock. All inmates going to the hospital are shackled and locked. The deputy took the defendant to Charity Hospital’s orthopedic clinic and sat him near Deputy Hamilton. The deputy left to turn in the defendant’s chart and heard a rustling sound. When he turned around the defendant was gone. People were screaming because the defendant ran down the corridor with Deputy Hamilton in pursuit. Deputy Wilson remained with another inmate.
The defendant reappeared and Deputy Wilson gave chase. The defendant kicked over a wheelchair in which a man was sitting. The defendant reached the end of the hall and Deputy Wilson grabbed him. The defendant broke free, but the deputy caught him again. Deputy Wilson was holding the defendant when he tried to grab the deputy’s weapon. The defendant slipped out of his shirt and backed through the sliding door.
Deputy Wilson saw a silvery object on the defendant’s side. He did not know whether the defendant had taken Deputy Hamilton’s gun at that point. Although the defendant was wearing the lock-type box, his hands and feet were free. Deputy Wilson chased him outside. People were by a bench. The defendant was running toward a lady who tried to get out of the way. The deputy ordered the defendant to stop several times. When the defendant did not comply, the deputy fired one shot. The deputy testified he fired because he felt the lady was in danger and fired one low shot because there were people- everywhere. The deputy thought he hit the defendant in the buttocks. The bullet grazed a female’s leg.
The defendant hopped over the lower portion of the hospital ramp and continued running. Deputy Wilson yelled for him to stop. The defendant headed toward La-Salle Street where 30 or 40 people were standing. The deputy fired one more low shot and thought he hit the defendant again. Another shot was fired simulta *1173 neously by Deputy Hamilton. A shot hit the defendant’s leg. The defendant was apprehended.
Deputy Wilson testified that during the attempted escape he was afraid for his life. No gun was found on the defendant.
Deputy Hamilton testified that he saw the defendant run away, warned Deputy Wilson, and chased the defendant. Deputy Wilson tried to cut the defendant off and was also in pursuit. The defendant’s arms and legs were not restrained. Deputy Hamilton saw Deputy Wilson and the defendant struggling in the hallway and the defendant tried to remove Deputy Wilson’s gun. The two men were out of sight when Deputy Hamilton heard a gunshot. He drew his weapon and proceeded out to the ramp. He saw a shiny object near the defendant’s hand as he ran down the ramp. The deputy yelled for the defendant to halt and when he refused, Deputy Hamilton fired a shot and hit the defendant in the back. He said he was afraid for the safety of Deputy Wilson and the civilians.
Deputy Minton investigated the escape and testified that the link connecting the defendant’s ankle shackles was missing. The handcuffs and lock-box had papers jammed in them to prevent the locking mechanism from engaging.
Testimony established that the defendant tampered with the handcuffs. One link was missing from the chains of his ankle shackles. He took flight in Charity Hospital’s crowded hallways and knocked over a man in a wheelchair. He attempted to seize Deputy Wilson’s gun.
Viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have found that the defendant intentionally departed from the legal custody of the deputy under circumstances wherein human life was in danger. Viewing the evidence in the light most favorable to the prosecution, we find that the essential elements of the crime of attempted aggravated escape were clearly proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Shapiro, 431 So.2d 372 (La.1982).
We have reviewed the record for errors patent and there are none.
The defendant’s conviction and sentence are affirmed.
AFFIRMED.