484 So.2d 122 (1986)
STATE of Louisiana
v.
Byron FRASER.
No. 85-K-1142.
Supreme Court of Louisiana.
February 24, 1986.
Robert J. Roux, Alton T. Moran, Office of Public Defender, for defendant-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledg, Asst. Atty. Gen., Bryan Bush, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-respondent.
LEMMON, Justice.
The issue before the court is whether the 1984 amendment to La.C.Cr.P. Art. 882 affected our holdings in State v. Jackson, 452 So.2d 682 (La.1984) and State v. Napoli, 437 So.2d 868 (La.1983) that an appellate court may not amend or set aside an illegally lenient sentence on its own motion, when the defendant alone has appealed and the prosecutor has not sought review of the sentence.
Defendant was convicted of armed robbery and attempted second degree murder. He was sentenced to twenty years imprisonment *123 at hard labor on each charge, with the sentences to be served concurrently. Although La.R.S. 14:64 provides that a person convicted of armed robbery "shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence", the trial judge did not mention any limitation on parole eligibility.
Defendant appealed, complaining only that the trial court erred in denying his motion to suppress evidence used against him at trial. The prosecutor neither appealed nor sought any review or modification of the sentence. The court of appeal affirmed the conviction, but vacated the sentence for armed robbery as illegally lenient and remanded to the district court for resentencing. 471 So.2d 769. On defendant's application, we granted certiorari to review the judgment of the court of appeal, particularly with regard to the amendment of sentence.[1] 475 So.2d 771.
In State v. Jackson, above, the defendant was convicted of simple burglary of a pharmacy and was sentenced as a multiple offender to ten years imprisonment at hard labor. The sentencing judge did not mention the mandatory denial of parole eligibility. Defendant alone appealed. The court of appeal affirmed the conviction and amended the sentence to provide that defendant was not eligible for parole, although the prosecutor had not raised the issue in the trial court and had not appealed or otherwise sought review in the appellate court. After granting certiorari, this court reinstated the sentence imposed by the trial court, holding that an appellate court, on an appeal by the defendant only, may not amend an illegal sentence so that the defendant is worse off for having exercised his right to appeal.
While the Jackson case was pending in this court, the Legislature enacted Acts 1984, No. 587, amending La.C.Cr.P. Art. 882 relative to correction of illegal sentences to read as follows:
"A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.

"B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
"(1) In an appealable case by appeal; or
"(2) In an unappealable case by writs of certiorari and prohibition.
"C. Nothing in this Article shall be construed to deprive any defendant of his right, in a proper case, to the writ of habeas corpus".[2] (emphasis added)
The court of appeal in the present case concluded that Act 587 was apparently intended to overrule the Jackson case. In a very thorough opinion in the en banc decision, the appellate court noted that the defendant in a criminal case does not have a constitutional or statutory right to an illegal sentence. Quoting Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), the court stated that "[t]he constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner". Further noting that the first sentence of the original Article 882 was taken from Fed.R.Crim.P. 35 and referring to federal decisions interpreting that rule, the court observed that an illegal sentence may be corrected by the sentencing court before an appeal is taken or after the time for appealing when no appeal has been taken, by the sentencing court while an appeal is pending, by an appellate court on appeal, or by the sentencing court after finality of the affirmation of the conviction and sentence on appeal. Finally, reasoning that Article 882 was not intended to permit only those corrections favorable to the defendant, the court held that it is the duty of both the *124 sentencing court and the appellate court to correct a sentence when the court discovers that the sentence does not conform to the applicable penalty statute, even if the corrected sentence is more onerous to the defendant.[3]
We disagree only with the intermediate court's conclusion that it is the duty of an appellate court to correct every illegal sentence that it discovers. The disagreement involves the proper allocation of functions between the prosecutor and the appellate court during the appeal in a criminal case.
When the trial court has imposed an illegal sentence, either the defendant or the prosecutor may move to correct the sentence in the trial court, or the trial court may raise the question on its own motion at any time.[4] If the trial court refuses an application to correct an allegedly illegal sentence (or if the question is not raised in the trial court), La.C.Cr.P. Art. 882 B provides that a sentence may be reviewed as to its legality, on the application of either the defendant or the prosecutor, by appeal or by writs. However, if neither party seeks review of the sentence as to its legality, but the conviction or sentence is appealed on other grounds, the scope of appellate review is restricted by La.C.Cr.P. Art. 920, which provides:
"The following matters and no others shall be considered on appeal:
"(1) An error designated in the assignment of errors and;
"(2) An error that is discoverable by a mere inspection of the pleading and proceedings and without inspection of the evidence".
Inasmuch as an illegal sentence is an error discoverable by a mere inspection of the proceedings without inspection of the evidence, La.C.Cr.P. Art. 920 (2) authorizes consideration of such an error on appeal. Further, La.C.Cr.P. Art. 882 A now authorizes correction (or remand for correction) by the appellate court.[5] The critical question is whether an appellate court under the concept of patent error may notice and correct an undesignated error when the correction is more onerous to the only party seeking review.
Article 882 A, as amended, merely authorizes an appellate court to correct an illegal sentence on review. Nothing in the amendment suggests that an appellate court may correct an illegally lenient sentence of which the prosecutor has not complained. Article 882 B still requires an application for review of an illegal sentence by either the defendant or the prosecutor. Of course, the appellate court may correct a patent error when the matter is otherwise properly before the court on appeal, but there is no codal or statutory authority for an appellate court to search the record for patent sentencing errors to the detriment of the only party who sought review by the appellate court.[6]
*125 Correction of a patent error, when the error is favorable to the only appellant, is contrary to the basic precepts of appellate practice and procedure, because a sole appellant's position should not be worsened by his having appealed. Standards for Criminal Justice, Standard 20-3.3 (2d ed. 1980) recognized this precept by prohibiting an appellate court, on an appeal by the defendant, from imposing a sentence more severe than the sentence from which the appeal was taken. Appeals are favored in law, and the obvious purpose of this rule is to prevent the discouraging of meritorious appeals which would result if an appellant could wind up in a worse position after the appeal than he was after the judgment of the trial court (unless the other party also sought review).
We also base our decision on the proper allocation of functions between the appellate court and the prosecutor. We note that the appearance of an impartial judiciary is not served when an appellate court supplies an objection to the prosecutor who has not complained that the defendant did not receive the harshest minimum sentence under the penalty statute. It is the prosecutor's duty to protect the state's interest in obtaining adequate sentences, and the criminal justice system suffers no detriment from the application of time-honored procedural rules which require the parties, and not the appellate court, to complain of some dissatisfaction with the judgment of the lower court in order to obtain any favorable change in the judgment or appeal. We therefore conclude that the amendment to Article 882 did not affect these basic procedural concepts, nor did it modify our holding in the Jackson case.
The portion of the judgment of the court of appeal which set aside the sentence is itself set aside, and the sentence imposed by the trial court is reinstated.
MARCUS, J., dissents.
WATSON, J., dissents and assigns reasons.
BLANCHE, J., dissents for reasons assigned by WATSON, J.
WATSON, Justice, dissenting:
Prior to the amendment of LSA-C.Cr.P. art. 882, an appellate court was required to disregard sentencing errors favorable to the defendant unless the prosecution raised the issue in the trial court and then sought appellate review. State v. Jackson, 452 So.2d 682 (La.,1984); State v. Napoli, 437 So.2d 868 (La.,1983). Jackson set forth the prior law as follows:
"[I]f a trial judge imposes a sentence without mentioning denial of parole eligibility required by a statute, it is inappropriate for an appellate court to correct the sentence when the defendant alone seeks appellate review. Only the prosecution can seek correction of the error, and this should be done by applying first to the trial court, subject to subsequent appellate review. See State v. Speed, 335 So.2d 28 (La.,1976); State v. Jimmerson, 432 So.2d 1093 (La.App.3d Cir. 1983)." 452 So.2d 682 at 684.
This jurisprudence was overruled when LSA-C.Cr.P. art. 882 was amended by Act 587 of 1984 to allow an appellate court, reviewing a case, to correct an illegal sentence on its own motion. The statute now provides:
"A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.

"B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
"(1) In an appealable case by appeal; or
"(2) In an unappealable case by writs of certiorari and prohibition.
"C. Nothing in this Article shall be construed to deprive any defendant of his right, in a proper case, to the writ of habeas corpus." (Emphasis added) *126 The amendment allows a court of appeal to correct an illegal sentence on review without application by the state. The question is whether that authority has an unconstitutionally chilling effect on the defendant's right to appeal, thereby denying due process of law? Increasing a lawful sentence has a chilling effect on the right to appeal. See State v. Williams, 439 So.2d 387 (La.,1983). However, correcting an unlawful or illegal sentence does not have the same effect. The Constitution does not require that sentencing be a game in which a judge's mistake gives immunity to the defendant. Bozza v. U.S., 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed.2d 818 (1947). The Due Process Clause is only offended by increased punishment after appeal when there is a realistic likelihood of vindictiveness. See Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); U.S. v. Henry, 709 F.2d 298 (5th Cir., 1983). An illegal sentence correction is not a penalty, because a defendant is not entitled to the benefit of an illegal sentence. Absent some indication of vindictiveness, such a sentence correction does not unconstitutionally chill a defendant's right to appeal.
The sentence, as corrected, will impose a valid rather than invalid punishment. See Bozza, supra. It was the appellate court's authority and duty to correct the invalid sentence, regardless of the state's action.[1] Not allowing correction of the sentence would affirm an illegal sentence in violation of the duty to correct illegal sentences whenever discovered by a court. See United States v. Romero, 642 F.2d 392 (10th Cir., 1981); Llerena v. United States, 508 F.2d 78 (5th Cir., 1975). Fraser's sentence for armed robbery was properly vacated by the Court of Appeal which remanded to the trial court for resentencing.
The majority fails to address the close issue, assigned as error, presented by the trial court's denial of defendant's motion to suppress evidence seized following an allegedly illegal stop.
At approximately 2:30 or 3:00 A.M., Baton Rouge Police Officer Joseph Ray Gauthier received a radio report of an armed robbery at the Admiral Motel parking lot on Airline Highway in East Baton Rouge Parish. An assailant had cut Raymond Davenport's throat, stabbed him, and stolen approximately $1,100, mostly in one hundred dollar bills. The victim informed the motel clerk that he was attacked by the man standing next to him when he paid his bill. The motel clerk, in reporting the attack, identified the culprit as a "white male". Shortly after receiving the report, while proceeding to the motel, Officer Gauthier spotted a "white male" walking at a fast pace along Airline Highway approximately one-half mile from the Admiral Motel. Thinking it was very unusual for someone to be walking there at that time of morning, the officer stopped the man, Byron Fraser.[2] Gauthier asked Fraser his starting point and destination. Fraser responded that he was on his way from a friend's home to the Waffle House. When asked if he were coming from the motel, Fraser answered no. Gauthier contacted Officer Netterville, who was at the scene of the attack, to give a description of Fraser. Officer Netterville suggested Gauthier bring the suspect to the motel to see if he could be identified. According to Officer Gauthier, Fraser freely and willingly went along with him to the motel.[3]
Upon arriving at the scene of the robbery, Fraser got out of the patrol car and blood was observed on his pants and shoes. Officer Netterville advised Fraser of his *127 Miranda rights and conducted a search. He found a watch in Fraser's pocket, which was identified by the victim as his watch. The defendant placed his wallet on the police car and stated it contained only twenty-six dollars. However, Gauthier noticed a bulge in the wallet, opened it, and found ten one hundred dollar bills, a fifty dollar bill, and a five dollar bill. Blood was on the watch and on a few of the bills.
Fraser contends that Officer Gauthier did not have the reasonable suspicion of criminal conduct necessary for an investigatory stop, and therefore all evidence gathered as a result of that stop should be suppressed.
The United States Constitution and the Louisiana Constitution secure persons against unreasonable searches and seizures.[4] However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1,[5] as well as the state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La., 1983), cert.den. 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Ossey, 446 So.2d 280 (La.,1984), cert.den. ___ U.S. ___, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Bailey, 410 So.2d 1123 (La.,1982); Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Belton, supra, held that reasonable cause for an investigatory detention is something less than probable cause. It must be determined in each case whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. Knowledge that an offense has been committed is often a critical element. State v. Bickham, 404 So.2d 929 (La., 1981); State v. Collins, 378 So.2d 928 (La.,1979), cert. den. 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122 (1980). Bickham held that it was proper to stop the defendant, a black male with a beard, when that was the sole description of an armed robbery suspect. The officer came upon Bickham driving away from the scene of a crime at 2:00 A.M. when very few cars were on the road. The only distinction between Bickham and Fraser is the additional descriptive factor of a beard.
The broad description of this suspect may not alone have justified the stop, but it is an important factor when viewed in context. The totality of the circumstances must be considered in determining whether reasonable cause exists for an investigatory stop. Belton, supra, at 1198. It was reasonable for Officer Gauthier to stop Fraser when he saw a white male walking at a fast pace approximately one-half mile from the scene of a crime in an area where it was unusual to see people walking during the early morning hours.
Since the detention was legal, it must be determined whether the police officer went beyond the limits of the investigatory stop when he took Fraser to the motel. An officer does not exceed the limits of a permissible investigatory stop when a suspect voluntarily consents to accompany the officer to another location. See Ossey, supra. According to Gauthier's testimony, Fraser freely and willing agreed to go to the Admiral Motel.[6] Because of Fraser's consent, Officer Gauthier did not exceed the limits of a permissible investigatory stop. The motion to suppress was correctly denied by the trial court.
The close issue of defendant's motion to suppress should be addressed by the majority even though the Court of Appeal did not err. The Court of Appeal correctly vacated Fraser's illegally lenient sentence.
I respectfully dissent.
NOTES
[1] Although we did not limit our grant of certiorari, we do not perceive any reason to review the appellate court's disposition of defendant's assignment of error relating to denial of the motion to suppress.
[2] Other than inserting paragraph designations, the 1984 amendment simply added the phrase "or by an appellate court on review", emphasized in the text of the article quoted above.
[3] In none of the cases cited by the court of appeal did an appellate court on its own motion correct a sentencing error when the corrected sentence was more onerous to the defendant.
[4] Because correction of an illegal sentence merely imposes a valid punishment for the particular crime instead of the invalid punishment originally imposed, there is no double jeopardy violation. Bozza v. United States, above. Thus, the defendant has no immunity or constitutional right to protection from the trial court's correction of a sentence below the statutory minimum. Moreover, the question of an illegal sentence may be raised at any time, even after the defendant has begun to serve the sentence or after the conviction and sentence have been affirmed on appeal. See La.C.Cr.P. Art. 882, Official Revision Comments (a) and (b); C. Wright, 3 Federal Practice and Procedure § 582 (2d ed.1982).
[5] As noted by the court of appeal in the present case, when correction of an illegal sentence does not involve the exercise of sentencing discretion, there is no reason why the appellate court should not simply amend the sentence. (We note, however, that under the prevailing practice at the time of the original adoption of Article 882, the appellate court did not correct an illegal sentence directly, but remanded the case to the trial court for that purpose.) However, if correction involves the exercise of sentencing discretion, as in State v. Jackson, above, the case must be remanded for the trial court to perform that function.
[6] Because this decision turns on the basis of the statutes and traditional rules of procedure, we do not reach the constitutional issue whether such a correction violates due process by its chilling effect on the exercise of the right of appeal.
[1] Several other states encountering a similar problem have held in favor of allowing the court of appeal, whether by application of the state or not, to correct illegal sentences favorable to defendants. People v. Benton, 100 Cal. App.3d 92, 161 Cal.Rptr. 12 (Cal.App.,1979); People v. Massengale, 10 Cal.App.3d 689, 89 Cal. Rptr. 237 (Cal.App., 1970); People v. Bowers, 92 A.D.2d 669, 461 N.Y.S.2d 900 (N.Y., 1983); Atkins v. State, 437 N.E.2d 114 (Ind.App., 1982), cert. den. 462 U.S. 1109, 103 S.Ct. 2460, 77 L.Ed.2d 1337 (1983). It is interesting to note that the majority decision places Louisiana in a more liberal posture than New York and California in regard to illegal criminal sentences.
[2] Preliminary Hearing, Tr. 10.
[3] Preliminary Hearing, Tr. 11.
[4] U.S. Const. amend. IV; LSA-Const. 1974, art. 1, § 5.
[5] LSA-C.Cr.P. art. 215.1(A) states, in pertinent part:

"A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense...."
[6] Preliminary Hearing, Tr. 11.