496 So.2d 583 (1986)
STATE of Louisiana
v.
Marvin Dale ROY.
No. KA 86 0270.
Court of Appeal of Louisiana, First Circuit.
October 15, 1986.
*586 Allen Helm, Asst. Dist. Atty., Houma, for State of Louisiana.
Indigent Defender's Office, Houma, for Marvin Dale Roy.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
Marvin Dale Roy was charged by bill of information with aggravated escape, in violation of La.R.S. 14:110, and the possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1. He waived his right to a jury trial on the aggravated escape charge only. After a bench trial, defendant was convicted of the responsive offense of simple escape. Simultaneously a jury convicted defendant as charged for the possession of a firearm. He was subsequently sentenced to ten years at hard labor, without the benefit of probation, parole or suspension of sentence for the firearm possession, and six months with the Department of Corrections for the conviction of simple escape. The court ordered the sentences be served consecutively. Defendant *587 appealed, setting forth and briefing ten assignments of error.

FACTS
Defendant was arrested in Miami Beach, Florida, three days after he escaped from the custody of Trooper Gerald Guidry at Troop "C" headquarters in Houma, Louisiana.[1] Trooper Guidry's service weapon, a .357 Magnum revolver, was recovered from defendant upon his arrest for the possession of a concealed weapon. Thereafter, Miami Beach officers ascertained that the weapon had been reported stolen in Louisiana and that defendant had escaped from custody here. He was extradited to Louisiana after serving a brief sentence in Florida.

DENIAL OF CONTINUANCE

(Assignments of Error One and Two)
By these assignments of error, defendant submits the trial court erred in refusing to grant his oral motions to continue the trial. In assignment of error number one, defendant argues the trial court erred in failing to grant his motion for a continuance urged after the state amended the bill of information on the date trial was to begin. In assignment of error number two, defendant argues the court erred in failing to grant a continuance because the transcript of the preliminary examination was not filed until the day before trial.

AMENDMENT TO BILL OF INFORMATION
The bill of information originally filed, while citing the offense of aggravated escape, alleged:
[T]hat one Marvin Dale Roy[,] ... did then and there unlawfully and intentionally escape from Trooper Gerald Guidry, while armed with a dangerous weapon[,] to-wit: a [,]357 Magnum pistol, while being detained at the Troop C Motor Pool, Houma, La., in violation of La.R.S. 14:110 as amended, ...
The bill was amended in open court to reflect that the escape was committed under circumstances wherein human life was endangered. Defendant immediately objected and asked for a continuance, urging his right to determine the identity of the person whose life was endangered. The state objected, arguing defendant was not prejudiced because the true nature of the charges had been thoroughly discussed between the attorneys; and defendant was well aware the state intended to charge the offense of aggravated escape. The trial court denied the continuance. Defendant contests this ruling.
Initially, we note that a motion for a continuance must be in writing and allege specifically the grounds upon which it is based. La.C.Cr.P. art. 707; State v. Spencer, 444 So.2d 354 (La.App. 1st Cir.1983). An oral motion presents nothing for the court to review. Id. Where the occurrences that allegedly make the continuance necessary arose unexpectedly, and defendant had no opportunity to prepare a written motion, the court may review the denial. See State v. Washington, 407 So.2d 1138 (La.1981).
From argument before the trial court, it appears that defense counsel was aware of the deficient bill of information; indeed, he intended to file a motion to quash the bill for this very reason and showed his motion to the prosecutor, causing the amendment. It is apparent, therefore, that the occurrence allegedly making the continuance necessary did not arise unexpectedly but could well have been anticipated by defendant.
*588 Moreover, even if the actual amendment had been a complete surprise, defendant was not prejudiced by it. La.R.S. 14:110 provides for the offenses of simple and aggravated escape. Essentially, an aggravated escape is a simple escape committed under circumstances wherein human life was endangered. The state's amendment simply made the bill of information internally consistent.
A prosecutor may make substantive amendments to a bill of information before trial begins. An indictment which contains a formal defect, imperfection, omission, or uncertainty may be amended at any time to correct such error. La.C. Cr.P. art. 487. Thus, the amendment was timely irrespective of its classification as one of substance or of form.
As a general rule, the denial of a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice caused by denial of the continuance. State v. Jones, 395 So.2d 751 (La.1981). It is incumbent upon defendant to show in what respect his defense has been prejudiced by the amendment of the bill. Id. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. La.C.Cr.P. art. 489. Where the continuance motion is based upon the want of time for preparation by counsel, this specific prejudice requirement has been disregarded only in cases where the preparation time was so minimal as to cast doubt on the basic fairness of the proceedings. State v. Dupre, 408 So.2d 1229 (La.1982).
Defendant set forth no specific prejudice to his defense caused by the amendment. The mere allegation by a defendant that his defense would be affected by the amendment of the bill of information does not constitute such a showing of prejudice as to render the trial court's refusal of a continuance reversible error. State v. Brown, 338 So.2d 686 (La.1976). The bill of information is captioned "aggravated escape". The minute entry of July 10, 1985, reflects that defendant was arraigned on the charge of aggravated escape. Clearly, defendant was put on notice that the state intended to charge defendant with an escape committed under circumstances wherein human life was endangered.
In any event, defendant was convicted of simple escape. Any allegation that he might have been prejudiced by the amendment of the bill which clarified the charge of aggravated escape is obviously moot. This assignment of error has no merit.

TARDY FILING OF TRANSCRIPT
Defendant further alleges the court erred in refusing to grant his motion for continuance because the transcript of the preliminary examination was not filed until the day before trial.
We do not find exceptional circumstances were presented by this motion that justify untimeliness. Defendant was certainly aware the transcript had not been filed at least seven days before the scheduled trial date and easily could have filed a timely written motion for a continuance. His failure to do so was not excusable.
Moreover, although the defendant in a criminal proceeding has a statutory right to a transcript of the preliminary hearing in his prosecution, the failure to provide the transcript is not reversible error absent a showing that prejudice in the cross-examination and impeachment of contrary witnesses was actually sustained. See State v. Allen, 276 So.2d 868 (La.1973); see also State v. Benson, 368 So.2d 716 (La.1979). No such prejudice has been shown. These assignments of error have no merit.

JURY VENIRE

(Assignment of Error Three)
In assignment of error number three, defendant submits the trial court erred in denying his motion to quash the jury venire, urged after the jury had been selected and opening arguments concluded. Defendant *589 claims he was deprived of a jury composed of a fair cross-section of the community because of the small number of members comprising the venire. He claims only thirty persons appeared for the voir dire.
The record does not reflect the total number of prospective jurors. The record does reflect, however, that at least thirty-four persons were present and that defendant used only nine of his peremptory challenges.
The trial court denied the motion, finding no prejudice to defendant because he had not used all of his peremptory challenges and because additional prospective jurors could have been summoned if a jury had not been selected from among those present.
La.Const. of 1974, art. I, § 16 gives every person charged with a crime a right to an impartial trial in the parish where the offense or an element of the offense occurred. La.C.Cr.P. art. 419 provides as follows:
A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant.
This article does not affect the right to challenge for cause, a juror who is not qualified to serve.
The defendant has the burden of establishing fraud or some irreparable injury in the jury selection process. State v. Brown, 414 So.2d 726 (La.1982). State v. Robertson, 464 So.2d 760 (La.App. 1st Cir.1984); writ denied, 467 So.2d 534 (La. 1985). The mere fact that prospective jurors composing a petit jury venire were excused or absent does not establish fraud or irreparable injury. State v. Smith, 430 So.2d 31 (La.1983). A defendant in a criminal jury trial has no right to a trial by a particular jury or juror, but only to a trial by a competent, impartial jury. State v. Coleman, 410 So.2d 1079 (La.1982). Due process in a criminal jury trial requires only that the defendant be afforded a jury from which there has been no arbitrary exclusion of any particular group of individuals. State v. Gardette, 352 So.2d 212 (La.1977); State v. Robertson, supra.
When defendant's allegation of prejudice caused by absenteeism is not substantiated by any evidence proffered as proof of that fact, the court's denial of the motion to quash is not error. See State v. Badon, 338 So.2d 665 (La.1976). The law presumes the legality of an array or a venire and he who asserts the contrary must prove it. See State v. Dallao, 187 La. 392, 175 So. 4 (La.); cert. den., 302 U.S. 635, 58 S.Ct. 51, 82 L.Ed. 494 (1937).
In argument before the court, defendant noted the attendance problem was undoubtedly occasioned or aggravated by a recent flood. He has not substantiated, therefore, that a fraud was practiced or great wrong committed which worked irreparable injury to the accused. La.C.Cr.P. art. 419; State v. Perry, 420 So.2d 139 (La.1982). This assignment of error has no merit.

MOTIONS TO SUPPRESS EVIDENCE

(Assignments of Error Four and Five)
FAILURE TO COMPLY WITH DISCOVERY
By assignment of error number four, defendant submits the trial court erred in refusing to grant his motion to suppress a confession given to the arresting officers in Miami Beach, Florida. He claims the confession should have been suppressed because the state failed to provide written notification of its contents prior to trial.
Defendant was arrested for carrying a concealed weapon by Sergeant James F. Casey, an officer of the Miami Beach City Police Department. Upon his arrest, defendant stated that he had taken the revolver from a trooper's locker and that he had escaped from jail in Louisiana.
During pre-trial discovery, defendant filed a motion in which he specifically requested the contents of any statements *590 made by him to anyone known by him to be a law enforcement officer, a copy of any written or recorded confessions or statements of any kind, and notification of the existence of any oral confession or statement. The state denied knowledge of any inculpatory statements.
At the preliminary hearing the state amended its discovery response to reveal that an oral confession was made to Sgt. Casey and Officer C. Pallis. Defendant requested a written supplement to the discovery response, and the court ordered the state to amend its answers in writing. The state failed to do so.
During trial and out of the jury's presence, a hearing to determine the admissibility of the confession was conducted.[2] At that time, defense counsel asserted he had not been notified of the contents of the confession and did not, in fact, know whether defendant had confessed to the offense of escape, possession of a firearm or theft, all charges with which he had been billed. The assistant district attorney argued that he had discussed the confession fully two to three days before trial with defense counsel. The trial court took the matter under advisement and denied the motion to suppress the following day. Defendant now argues the confession should not have been admitted because of the state's failure to provide him the substance of the statement.
Defendant was clearly entitled to the substance of the oral statements made to the Miami Beach police officers. La.C. Cr.P. art. 716. The state's failure to provide the contents of the statements, whether caused by accident or deliberately done, was reprehensible. The discovery rules of the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982). Discovery procedures enable the defendant to properly assess the strength of the state's case against him in order to prepare his defense. See State v. Ray, 423 So.2d 1116 (La.1982). If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. Id.
The court's order that the state amend its responses to defendant's discovery motion in writing was undoubtedly to effectuate these safeguards and to eliminate the type of "swearing contest" which resulted from the state's failure to do so. However, the failure of the state to comply with the discovery procedures will not automatically command reversal. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Hamilton, 470 So.2d 604 (La.App. 1st Cir.1985). Defendant must show prejudice, and the court will review the record for a determination of whether or not any such prejudice which may have resulted from the noncompliance caused the trier of fact to reach the wrong conclusion. State v. Hamilton, supra.
Defendant neither alleges nor substantiates specific prejudice which resulted from the state's breach of discovery procedures. The record does not reflect any manner in which defendant might have been lulled into a misapprehension of the strength of the state's case. While the state's failure to comply with the court's order and the codal procedures is indefensible, substandard procedures practiced by a district attorney's office are not, in and of themselves, sufficient ground to suppress relevant evidence. See State v. Johnson, 486 So.2d 787 (La.App. 1st Cir.1986). We find no error in the denial of defendant's motion for a continuance on this ground.
ILLEGAL ARREST
By assignment of error number five, defendant submits the trial court erred in denying his motion to suppress his confession and the weapon seized upon his arrest. He claims the arrest was unlawful and *591 without probable cause; therefore, evidence obtained as a result thereof was inadmissible as a "fruit of the poisonous tree."
The record establishes that, at the time of defendant's apprehension, the officers were seeking a dark complected male in connection with a homicide. Sgt. Casey and Officer Chris Pallis testified the suspect was variously described as dark skinned, a part-white, part-black Latin male, a black Latin male, or a mulatto. Casey testified the broadcast description indicated the suspect was of slight build, and Pallis testified the description included a dark mustache. Both men stated the suspect was reported to be wearing dark clothing.
An interoffice memorandum from Dixon Correctional Institute was filed into the record as State Exhibit 2. The memorandum contains a photograph of defendant which shows him to be a dark brunette with a slight build. Defendant wore a dark mustache and was attired in dark clothing at the time of the initial confrontation.
The instant case involves an arrest which occurred in Florida. Therefore, we look initially to see if the arrest complied with Florida law.
The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one who is reasonably suspected of criminal conduct is recognized by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Adams v. State, 295 So.2d 114 (Fla.App. 2 Dist.1974). A person may be subjected to a limited seizure under Terry v. Ohio when an officer has a reasonable and articulable suspicion that the person may be engaged in criminal activity. Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980).
Florida courts have recognized that, in this context, law enforcement officers can indeed initiate contacts with citizens without creating a stop and seizure situation. Sommer v. State, 465 So.2d 1339 (Fla.App. 5 Dist.1985). In State v. Rawlings, 391 So.2d 269 (Fla.App. 4 Dist.1980), petition denied, 399 So.2d 1145 (Fla.1981), an individual heard some shots outside his home and, upon investigating, saw someone outside but could not identify him. He called the police, who arrived on the scene to find the defendant and a woman on the street in the vicinity. The officer engaged the defendant in conversation and, while doing so, noticed the outline of a gun in his back pocket. The officer then conducted a pat down search which revealed a .25 caliber pistol. The court held that the police did not have a founded suspicion to justify a detention of the defendant. However, while the court agreed that there was insufficient evidence of an articulable basis of founded suspicion presented at the hearing on the motion to suppress, it nevertheless found that the police activity in this case did not constitute a detention of the defendant; thus, no showing of founded suspicion was required to justify the encounter. The court went on to add:
A mere contact between a citizen and a police officer which evokes voluntary cooperation on the part of the citizen is not a "seizure" within the meaning of the Fourth Amendment. If, during a lawful and extremely temporary encounter between a police officer and a citizen, probable cause is formulated to believe that the citizen is carrying a dangerous weapon, a frisk of that citizen is entirely justified to insure the safety of the police officer.
Sgt. Casey testified that he first encountered defendant in the early morning hours near the oceanfront. The officer was aware a homicide committed with a firearm had been perpetrated approximately two hours before about five blocks from that location. The attention of Sgt. Casey and that of his partner, Lt. Lamb, was first directed to a young woman at the bus stop who appeared to be approximately fifteen years of age. After questioning, the officers determined that she was actually nineteen or twenty years old. However, while *592 they were questioning her, the officers noticed defendant, sitting quietly on a bus bench in the shadows. Since he superficially met the description of the homicide perpetrator, the officers approached him, seeking identification. Apparently, as defendant reached for his wallet, Lt. Lamb spied the firearm and conducted a pat-down procedure.[3]
We find, therefore, that the initial stop was a lawful, temporary encounter which became a detention only after the officers were given probable cause to suspect defendant was carrying a dangerous weapon. The court did not err in finding the confession and the pistol to be admissible.

OTHER CRIMES EVIDENCE

(Assignment of Error Six)
By assignment of error number six, defendant submits the trial court erred in denying his motion for a mistrial when the state referred to evidence of another crime. During the state's opening remarks, the prosecutor referred to the fact that the gun which belonged to Trooper Guidry disappeared at the time of defendant's escape. Defendant claims this reference to the theft of the weapon was inadmissible.
The trial court denied defendant's motion for a mistrial, ruling the evidence complained of was a part of the res gestae. We agree. Although defendant was separately charged with the theft of the pistol, Count II, the firearm offense was derived from his possession of this weapon. To constitute res gestae, the circumstances must be necessary incidents of the criminal act or immediate concomitants of it, or form in conjunction with it one continuous transaction. La.R.S. 15:448; State v. Jackson, 450 So.2d 621 (La.1984). The theft of the pistol was obviously intended to facilitate defendant's escape and formed one continuous transaction with the escape. This assignment of error has no merit.

PREJUDICIAL REMARKS

(Assignment of Error Seven)
By assignment of error number seven, defendant submits the trial court erred in denying his motion for a mistrial based on a prejudicial remark by the prosecutor.
During the trial testimony of Sgt. Casey, the state sought to introduce a property slip which referred to the pistol seized from defendant in Florida. Defendant objected and the following exchange occurred:
MR. DOYLE: Judge[,] I would object to that. I don't think the proper predicate is laid at this time. Again[,] I would like to see this property slip that he is talking about. That he identified.
MR. HELM: I don't know what kind of predicate we need. The man confessed he stole it[,] Judge. The officer identified it. Now what kind of predicate are you talking about?
Defendant immediately requested the jury be excused and moved for a mistrial on the ground that defendant had not confessed to stealing the weapon. The judge found the remarks unfortunate but not inflammatory and denied the motion. He did agree, and did in fact admonish the jury to disregard the prosecutor's remarks. Additionally the court warned Mr. Helm if the incident were repeated, a motion for a mistrial would be granted.
Mistrial is a drastic remedy and, unless mandated by La.C.Cr.P. art. 770, it is committed to the sound discretion of the trial judge and is warranted only if substantial prejudice results which would deprive a defendant of a fair trial. State v. Jarman, 445 So.2d 1184 (La.1984). Before allegedly prejudicial remarks or arguments requires a reversal, the court must be thoroughly *593 convinced that the jury was influenced by the remarks and that such contributed to the verdict. Id.
The jury had been informed of the contents of defendant's confession, particularly that he had advised Sgt. Casey that he had taken the gun from a trooper in Louisiana. The jury was also aware that the gun was recovered from defendant in Florida, positively identified by Louisiana State Trooper Gerald Guidry as his weapon, taken from his locker in Troop C. Headquarters. We do not think, therefore, that the prosecutor's remarks, though gratuitous, influenced the jury or contributed to the verdict. We find no error in the denial of defendant's motion for a mistrial.

SUFFICIENCY OF THE EVIDENCE

(Assignment of Error Eight)
By assignment of error number eight, defendant submits the evidence is not sufficient to support the verdict. Specifically, he claims insufficient evidence was presented to establish that defendant possessed the pistol within the boundaries of the State of Louisiana.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Garcia, 483 So.2d 953 (La.1986).
Sgt. Casey testified that upon his arrest in Florida, defendant confessed that he had taken the gun from a trooper's locker in Terrebonne Parish, Louisiana. However, Officer Chris Pallis testified that defendant related that he had taken the weapon from a trooper's locker but had not disclosed where the locker was located. The jury obviously placed more credence in the testimony of Sgt. Casey. Where there is conflicting testimony as to a factual matter, the question of the credibility of witnesses is within the sound discretion of the trier of fact. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Jackson, 484 So.2d 953 (La.App. 1st Cir.1986).
Moreover, even without consideration of defendant's confession, the record contains ample evidence from which the jury could have inferred that defendant removed the weapon from Trooper Guidry's locker and thus came into possession of the firearm within state boundaries. Trooper Guidry testified that he brought his weapon to work on January 17, 1985, and hung it in an unlocked locker. He discovered the gun was missing approximately forty-five minutes after he noticed defendant had disappeared. The gun was discovered on defendant's person three days later.
Circumstantial evidence has been defined as proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and experience. State v. Buchanan, 439 So.2d 576 (La.App. 1st Cir.1983). When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis of the conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Garcia, supra; State v. Porretto, 468 So.2d 1142 (La.1985).
At trial, defendant attempted to establish that a person other than defendant might have taken the weapon from the trooper's locker by eliciting testimony that someone from the street would have been able to enter the premises and that others were present in the area besides defendant and *594 Guidry. Nonetheless, the firearm was recovered from defendant. Defendant did not elicit a response establishing a reasonable hypothesis of innocence which could explain his possession of the pistol. Further, although he did not recall defendant mentioning a particular location, Officer Pallis testified defendant confessed he took the weapon from a trooper's locker. Any rational trier of fact could infer that the trooper's locker to which he referred was that of Trooper Guidry at Troop "C" which the jury obviously found as a fact to be located in Grey, Louisiana.
This assignment of error has no merit.

DENIAL OF MOTION FOR NEW TRIAL

(Assignment of Error Nine)
By assignment of error number nine, defendant submits the trial court erred in denying his motion for a new trial. Defendant moved for a new trial on two grounds: (1) the verdict is contrary to the law and the evidence because the state failed to prove the possession of a firearm in Louisiana; and (2) the court erred in denying defendant's motion for a mistrial after the prosecutor erroneously referred to the theft of the weapon.
The ruling on a motion for a new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of an abuse of that discretion. State v. Graham, 422 So.2d 123 (La.1982). Having thoroughly reviewed these arguments in connection with assignments of error seven and eight, and finding them to be without merit, we find no abuse of discretion in the denial of a motion for new trial on these grounds.

EXCESSIVE SENTENCE

(Assignment of Error Ten)
By assignment of error number ten, defendant submits the trial court erred in imposing an excessive sentence.
The maximum term of imprisonment that can be imposed for a conviction of the possession of a firearm by a convicted felon is ten years at hard labor, without benefit of probation, parole or suspension of sentence. La.R.S. 14:95.1. Thus, defendant received the maximum permissible sentence.
The sentencing range applicable to a conviction of simple escape is dependent upon the manner in which the offense was committed, as set forth in La.R.S. 14:110, which provides in pertinent part as follows:
(1) A person who is participating in a work release program as defined in Paragraph A(2) of this Section and who commits the crime of simple escape shall be imprisoned with or without hard labor for not less than six months nor more than one year and any such sentence shall not run concurrently with any other sentence.
(2) A person who fails to return from an authorized furlough as defined in Paragraph A(3) of this Section shall be imprisoned with or without hard labor for not less than six months nor more than one year and any such sentence shall not run concurrently with any other sentence.
(3) A person imprisoned, committed, or detained who commits the crime of simple escape as defined in Paragraph A(1) of this Section shall be imprisoned with or without hard labor for not less than two years nor more than five years; provided that such sentence shall not run concurrently with any other sentence.
The evidence presented to the jury was directed to proof of the offense of the possession of a handgun. Although Trooper Guidry testified defendant was at the headquarters on the date of the offense, he did not testify defendant was in his custody nor indicate any reason that defendant might have been in his custody. The only evidence that defendant escaped from lawful custody was a statement dictated into the record by defense counsel after the conclusion of the jury trial, as follows:
The defense will stipulate on Count 1 of the aggravated escape that on January *595 17, 1985 the defendant was in the custody of state trooper Gerald Guidry at Troop "C" headquarters in Gray, Louisiana where on that day he left without permission.
The state then introduced evidence of defendant's previous incarceration (State Exhibit 2) and the court found defendant guilty of simple escape, without specification of the provision under which he found the offense had been committed.
By the terms imposed, it appears defendant was sentenced under either La.R.S. 14:110 B(1), providing for the escape from a work release program, or La.R.S. 14:110 B(2), the failure to return from a furlough. However, sentencing under either of the above provisions was improper since the evidence at trial clearly established the elements of simple escape only under R.S. 14:110 A(1); i.e., escape from the custody of Trooper Guidry. The minimum sentence which can be imposed for an offense of this nature is not less than two years with or without hard labor. La.R.S. 14:110 B(3). Therefore, the sentence imposed is not legal.
When the trial court has imposed an illegal sentence, either the defendant or the prosecutor may move to correct the sentence in the trial court, or the trial court may raise the question on its own motion at any time. State v. Fraser, 484 So.2d 122 (La.1986). Because correction of an illegal sentence merely imposes a valid punishment for the particular crime instead of the invalid punishment originally imposed, there is no double jeopardy problem. Moreover, the question of an illegal sentence may be raised at any time, even if the defendant has begun to serve the sentence or after the conviction and sentence have been affirmed on appeal. Id. However, the Louisiana Supreme Court has determined that an appellate court may not correct an illegally lenient sentence of which the prosecutor has not complained. Id. Therefore, although the sentence imposed, constituting only one-fourth of the statutory minimum, is clearly illegal, corrective action can be taken only by the trial court on its own motion or after motion by the state.
We do not find the instant sentences to be excessive. The trial court has wide discretion in the imposition of sentence, and a sentence will not be set aside absent an abuse of discretion. In imposing sentence, the trial court noted defendant has a history of criminal activity over a long period of time. The record reflects defendant was convicted of and served time for three counts of simple burglary. Less than a year later, it appears defendant committed a particularly brutal attack on an acquaintance which could have resulted in his death. His subsequent escape from custody while armed undoubtedly convinced the trial court that defendant is a very dangerous individual. No mitigating circumstances were presented. We find no abuse of discretion in the imposition of the instant sentences.

PATENT ERROR
The transcript of the sentencing proceedings reflects that defendant was sentenced on the date the trial court denied his motion for a new trial without waiving the minimum twenty-four hour delay. See La.C.Cr.P. art. 873. The failure of the trial court to wait the minimum delay before imposing sentence is harmless error absent a showing that the failure to observe the delay caused the defendant to suffer some actual prejudice. See State v. White, 404 So.2d 1202 (La.1981). We find no prejudice resulted to defendant.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The record reflects that defendant pled guilty to three counts of simple burglary in November, 1978; and the court imposed a total sentence of six years at hard labor. After receiving credit for good behavior while incarcerated, defendant was released from Dixon Correctional Institute July 29, 1982. Thereafter, defendant was arrested June 22, 1983, pursuant to warrants issued for attempted armed robbery and attempted first degree murder. The record does not reflect the disposition of these charges; presumably, one or both of them formed the basis for the incarceration from which defendant escaped in January, 1985.
[2] Since the grounds asserted at this hearing were not set forth in defendant's motion to suppress, we presume the court permitted defendant to file an oral motion to suppress due to the tardy filing of the transcript of the previous proceeding.
[3] Lt. Lamb was not subpoenaed by either side. Sgt. Casey testified Lt. Lamb saw the weapon as defendant reached for his wallet. This testimony, to which defendant did not object, is the only evidence of the events leading up to the pat-down. Although it's a close determination, presumably the testimony was offered to explain the officer's conduct and not to prove defendant was carrying the pistol in his waist band.