522 So.2d 628 (1988)
STATE of Louisiana
v.
Elton WASHINGTON and Thaddeus Bentley.
No. KA-7184.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Rehearing Denied April 13, 1988.
Writ Denied April 29, 1988.
*629 William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Joseph H. McCusker, III, R. Jeffrey Bridger, Asst. Dist. Attys., New Orleans, for appellee.
Calvin Johnson, New Orleans, for Elton Washington, appellant.
Elizabeth W. Cole, Supervising Atty., Kathleen R. Hennessey, Student Atty., New Orleans, for Thaddeus Bentley, appellant.
Before GULOTTA, C.J., and BYRNES and CIACCIO, JJ.
GULOTTA, Chief Judge.
Elton Washington and Thaddeus Bentley appeal from their convictions on two counts of armed robbery, violations of LSA-R.S. 14:64. We affirm.

FACTS
Around midnight on July 9, 1983, Sharon Escarra and Peter Babin were walking in the French Quarter when two men robbed them at gunpoint of jewelry, a purse, and a wallet. The men fled in a car, but were stopped two blocks away for a traffic violation. Both victims identified Washington and Bentley on the scene as the perpetrators. Pistols and stolen property were confiscated.
On February 25, 1985, each defendant was found guilty as charged of two counts of armed robbery. Washington was sentenced to fifteen years at hard labor on each count, both sentences to run consecutively; and Bentley was sentenced to serve two consecutive ten year sentences. Appealing, Washington only requests review of the record for errors patent, while Bentley has raised three assignments of error concerning jury instructions, voir dire, and the State's rebuttal argument.

ERRORS PATENT
Upon reviewing the record for errors patent, we find that the minute entries do not indicate whether defendants were present during voir dire, the rendition of judgment, and sentencing. Nevertheless, the transcript of the voir dire examination indicates that the two defendants were "introduced" to the prospective jurors who were then questioned collectively whether they knew defendants. Similarly, the transcript of trial indicates that both defendants *630 were identified in court and were found guilty and sentenced on the same day. Under these circumstances, because the transcripts establish that both defendants were present at these stages of trial, the silence of the minute entries on this point is harmless. See State v. Dillon, 511 So.2d 850 (La.App. 4th Cir.1987).
We further note that the trial judge failed to order that defendants' sentences be served without benefit of parole, probation, or suspension of sentence. This error is favorable to the defendants, however, and cannot be corrected on appeal where neither the defense nor the State seeks a review of the sentences. See State v. Fraser, 484 So.2d 122 (La.1986).

JURY INSTRUCTIONS
In his first assignment of error, Bentley contends that the judge gave the jury a confusing and repetitious charge on the definition of "reasonable doubt" that misled the jury to convict him under a lesser standard of proof. According to Bentley, the charge failed to state that reasonable doubt could arise from a lack of evidence. Further, the defendant complains that the trial judge erred by limiting the jurors in his charge to the facts before them, and failed to inform them that they could "go outside the evidence" to give him the benefit of every reasonable doubt arising from the evidence or lack thereof as set forth in LSA-C.Cr.P. Art. 804. He further argues that the use of the phrase "moral certainty" in the charge misled the jurors instead of allowing them to decide the meaning of the self-explanatory concept of "reasonable doubt" in their own minds. We disagree.
Concerning "reasonable doubt", LSA-C. Cr.P. art. 804 provides in pertinent part:
"A. In all cases the court shall charge the jury that:
(1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article."
Formerly, in State v. Mack, 403 So.2d 8 (La.1981), the Supreme Court required that the exact words of LSA-C.Cr.P. 804 be included in jury charges. In State v. Rault, 445 So.2d 1203 (La.1984), cert. denied Rault v. Louisiana, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984), Mack was overruled, and the Supreme Court held that a charge substantially complied with LSA-C.Cr.P. art. 804 where it instructed the jury that a reasonable doubt would arise if, after considering both proven and unproven facts, the jury found "the evidence unsatisfactory upon any single point".
In the instant case, the following charge on reasonable doubt was given to the jury:
"If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendants' guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the defendants. This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy, or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty of the defendants' guilt. If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence *631 unsatisfactory upon any single point indispensably necessary to constitute the defendants' guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.
"The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt, but the rule does not go further and require a preponderance of testimony. It is incumbent upon the State to prove the offense charged, or legally included in the indictment to your satisfaction and beyond a reasonable doubt. A reasonable doubt is not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt for which you could give good reason."
Although the charge does not specifically instruct the jury to consider both "proven and unproven" facts or the "lack of evidence", as in Rault, the charge in the instant case advised the jurors that a reasonable doubt justifying a verdict of not guilty would arise if they considered "all of the facts of the case" and found unsatisfactory evidence upon any single point that was indispensably necessary to constitute guilt. Consequently, we conclude that the charge substantially complies with LSA-C. Cr.P. art. 804.
We further reject Bentley's argument that the use of the phrase "moral certainty" in defining reasonable doubt confused the jury.
In State v. McDaniel, 410 So.2d 754 (La. 1982), the Supreme Court was confronted with a jury charge defining reasonable doubt as "... a doubt that would give rise to great uncertainty in your minds by reason of the unsatisfactory character of the evidence ... one that would make you feel morally uncertain as to the defendant's guilt." The court held that this language could mislead the jury into applying an insufficient standard because the "great uncertainty" language "overstates the degree of uncertainty required for a reasonable doubt" and because the "morally uncertain" language "could be interpreted to mean that the uncertainty must be based on feeling, i.e., lack of moral indignation rather than a reasonable doubt about an essential fact." Supra, at p. 756. Furthermore, in other respects, the McDaniel charge also contravened LSA-C.Cr.P. art. 804 by prohibiting the jury from going beyond the evidence presented at trial to seek doubts upon which to acquit the defendant.
However, in State v. Taylor, 410 So.2d 224 (La.1982), the Supreme Court upheld a lengthy jury charge that, taken as a whole, presented no problems for persons of ordinary intelligence to understand the definition of reasonable doubt. The Taylor charge defined "reasonable doubt" as "... doubt as would give rise to a grave uncertainty, raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt".[1] *632 Likewise, in State v. Miller, 489 So.2d 268 (La.App. 4th Cir.1986), writ denied 496 So. 2d 1030 (La.1986), this court upheld a similar lengthy charge that also contained the phrases "grave uncertainty" and "moral certainty".
Because the charge in the instant case is similar to the charges upheld in Taylor and Miller, and does not contain an incorrect statement of law like the charge in McDaniel, we conclude that the jury was adequately instructed concerning reasonable doubt. Accordingly, this assignment has no merit.

VOIR DIRE
In his second assignment of error, Bentley contends the trial judge erred in excusing for cause two prospective jurors who had indicated that they would require the State to produce the weapon used in the armed robbery. According to defendant, the two jurors were rehabilitated because they later testified that they "would listen to the evidence and apply the law". Bentley argues that as a result of excusing these jurors for cause, the State was allowed more peremptory challenges than permitted under LSA-C.Cr.P. art. 800.
During voir dire examination, two prospective jurors, Edna Adams and Veronica Brumfield, stated that the State must produce the gun used in the robberies in order for them to convict the defendants. After the trial judge noted that in some cases the weapon used could be unavailable for trial if it had been lost or destroyed, Adams indicated that she would "listen" to testimony about the weapon, but that it would be better if the State produced the gun. Following more questioning by the prosecutor and the defense attorney, Adams stated that she could (according to the way the witness "talked") believe testimony that a gun had been used, and Brumfield stated that she could listen to the evidence. When the judge denied the State's challenge for cause, however, the prosecutor questioned the jurors further:
"BY MR. KOHNKE:
Before I continue, I want to clarify one point, one more time from Ms. Adams.
I asked you a hypothetical and if your opinion has changed, that's fine. But, do you realize that the State is not required to prove to you what happened to the gun? The hypothetical that Ms. Cole gave you implies that the State may show that the gun was thrown away. There need not be any discussion as to where the gun presently exists. The question is was the gun present at the time of the commission and my hypothetical calls for there being no gun produced at trial before your eyes today, in this trial. You told me before that you would absolutely require the gun being shown to you. Has your opinion changed, is that it?
BY MS. ADAMS:
I don't understand.
BY MR. KOHNKE:
Because I don't wantwhat I want to avoid is people putting words in your mouths. We are here to determine whether you accept the law. If you can't, that's fine, and if you can, I'll go on.
BY MS. ADAMS:
If you don't produce the gun, no.
BY MR. KOHNKE:
Ms. Brumfield, how about you, has your opinion changed or would you still require the State to produce the gun?
BY MS. BRUMFIELD:
I would require that myself.
BY MR. KOHNKE:
Absolutely?
BY MS. BRUMFIELD:
Yes."
The prosecutor then reurged his challenges for cause to both jurors, and the trial judge granted them over the defense's objection.
Under LSA-C.Cr.P. Art. 797, a juror may be challenged for cause if he or she will not *633 accept the law as given by the court. See State v. Isaac, 487 So.2d 565 (La.App. 4th Cir.1986). The trial court has broad discretion in deciding whether to grant a challenge for cause, and its decision should not be disturbed absent an abuse of that discretion. State v. Comeaux, 514 So.2d 84 (La. 1987).
In the instant case, despite instructions that evidence of a weapon could be shown through the testimony, both prospective jurors ultimately stated that the State would be required to produce a weapon before they would believe one was used in the robberies. Consequently, we cannot say the trial judge erred in granting the challenges for cause. Accordingly, this assignment lacks merit.

PREJUDICIAL REMARKS
In his final assignment of error, Bentley contends that the trial judge erred in refusing to grant a mistrial under LSA-C.Cr.P. art. 770 due to prejudicial remarks made during the State's rebuttal argument. Specifically, the defendant complains of the following comments (referring to the victims) by the prosecutor in the course of asking the jurors to apply the law in the case:
"BY MR. KOHNKE:
... What I am asking from you [jurors] along with Peter Babin and Sharon Escarra whose [sic] asking the same from you,
Ladies
BY MS. COLE:
Objection, Your Honor. At this time I make a rule for a mistrial
BY THE COURT:
A rule for mistrial is denied. You may argue something else, Mr. Kohnke."
The prosecutor thereafter asked the jury to weigh the evidence and find the defendants guilty as changed.
Under LSA-C.Cr.P. art. 774, the scope of the closing argument "... shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." Furthermore, the argument cannot appeal to prejudice, and the State's rebuttal must be confined to answering the defendant's argument. Nevertheless, if there are remarks that go beyond the scope of LSA-C. Cr.P. art. 774, they are considered harmless unless the reviewing court is thoroughly convinced that they inflamed the jury and contributed to the verdict. State v. Jarman, 445 So.2d 1184 (La.1984); State v. Deboue, 496 So.2d 394 (La.App. 4th Cir. 1986), writ denied 501 So.2d 229 (La.1987).
Although the prosecutor briefly referred to the victims in asking the jurors to apply the law, we cannot find reversible error in these remarks in light of the overwhelming incriminating evidence in the case. There were no grounds for a mistrial under these circumstances.
Accordingly, the defendants' convictions and sentences are affirmed.
AFFIRMED.

ON APPLICATION FOR REHEARING
PER CURIAM.
The State has applied for a rehearing, aggrieved that we noticed but did not correct the sentencing error favorable to defendants. Although it mentioned the error in its appellate brief and called for correction, the State has not appealed, answered defendants' appeal, or otherwise sought review of the sentences.
The State relies on State v. Fraser, 484 So.2d 122 (La.1986), particularly footnote 5 on Page 124, as authority for this court to change the defendants' sentences. Footnote 5 does not grant authority to change a sentence on appeal, however, but only states that when an appellate court has such authority it should make a non-discretionary sentence change rather than remand the case.
In State v. Fraser, supra, the Supreme Court addressed the basic procedural concepts regarding appellate court review of criminal convictions and sentences. The court held that "... the amendment to [La.C.Cr.P.] Article 882 did not affect these basic procedural concepts, nor did it modify our holding in the Jackson case [State v. Jackson, 452 So.2d 682 (La.1984)]." The court reasoned, "Correction of a patent error, when the error is favorable to the only *634 appellant, is contrary to the basic precepts of appellate practice and procedure, because a sole appellant's position should not be worsened by his having appealed." 484 So.2d at 125. Furthermore, the court observed, "It is the prosecutor's duty to protect the state's interest in obtaining adequate sentences, and the criminal justice system suffers no detriment from the application of time-honored procedural rules which require the parties, and not the appellate court, to complain of some dissatisfaction with the judgment of the lower court in order to obtain any favorable change in the judgment on appeal." Id. (Emphasis in the original).
In order to seek review of defendants' sentences, the prosecutor could have filed a motion to correct the sentences in the trial court, answered defendants' appeals, or applied for writs of review. Absent one of these procedural devices, the State cannot have the sentences corrected simply by raising the issue in its appellate brief. A brief is not a proper procedural device by which to seek review.
Accordingly, the application for rehearing is denied.
NOTES
[1] The jury charge in Taylor read as follows:

"If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your minds by reasons of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt. If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty. The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt, but the rule does not go further and require a preponderance of testimony. It is encumbent upon the State to prove the offense charged, or legally included in the indictment, to your satisfaction and beyond a reasonable doubt. A reasonable doubt is not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt, for which you could give good reason. In other words, earlier in the case in the selection of the jury, I told you one of the things that you should consider in the definition of reasonable doubt is when you have a doubt and you can assign a reason give a reason for that doubt. That is reasonable doubt."